UNITED STATES, Appellant

v.

FRANCISCO R. RIOS, Private, U. S. Army, Appellee

4 USCMA 203, 15 CMR 203

204

COL Allan R. Browne, U. S. Army, LT COL William R. Ward, U. S. Army, MAJ Irvin M. Kent, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellant.

MAJ Edwin Doran, U. S. Army, and 1ST LT Justin L. Vigdor, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Certified questions from The Judge Advocate General, United States Army, have challenged in this Court the correctness of a board of review's action in ordering a rehearing in this case, which was tried by general court-martial in Japan. The court found the accused guilty under a specification purporting to charge a violation of the Uniform Code of Military Justice, Article 122, 50 USC § 716, which in terms alleged the following:

"Specification: In that Private Francisco R. Rios, Company 'G', 5th Cavalry Regiment, 1st Cavalry Division, APO 201, did at the town of Chitose, Hokkaido, Japan, on or about 26 August 1952, by means of putting him in fear, steal from Corporal Francisco D. Ogo, Company A, 43rd Engineer Battalion, against his will, a cigarette lighter of some value less than $20.00 and 1,300 yen of some value less than $20,00, the property of the said Corporal Francisco D. Ogo."

The three questions certified by The Judge Advocate General are set out below:

"(1) Does the specification, as a matter of law, state the offense of robbery in violation of Uniform Code of Military Justice, Article 122, in view of the omission of the words 'the person of' or 'the presence of'?

"(2) If the answer to the preceding question is in the affirmative, was the omission of the word 'permanent-ly' in the law officer's instruction on larceny prejudicial error, considering the posture of the defense at the trial and the absence of an issue that the intent was other than to deprive the owner permanently of his property?

"(3) If the answers to the two preceding questions are in the affirmative, does the record of trial support a finding of the lesser included offense of a taking, through putting him in fear, with intent to deprive the owner temporarily of his property, under Uniform Code of Military Justice, Article 134, which offense is closely related to the offense of robbery and subject to the same limitations of punishment as for robbery?"

II

The defense's initial contention is that, although robbery was established by the evidence adduced at the trial, the specification omitted allegations necessary to charge an offense in violation of Article 122, supra. That Article in terms refers to a taking of anything of value "from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property." The defense points out that it was not specified that the accused had taken anything from the "person" or the "presence" of Corporal Ogo, his victim. The Manual for Courts-Martial, United States, 1951,

provides that a specification shall delineate the facts constituting the offense charged; and that "the facts so stated will include *all* the elements of the offense sought to be charged." (Emphasis supplied.) Manual, supra, paragraph 28. Later, in discussing the elements of proof of robbery, the same source states: "(*b*) that such larceny was *from the person* or *in the presence* of the person alleged to have been robbed." Manual, supra, paragraph 201. (Emphasis supplied.) The sample specification for robbery provided in the Manual contains the allegation "steal from the (person) (presence) of —." Manual, supra, Appendix 6*c*, sample specification 91, page 484. The very touchstone of robbery's gravity, of course, is that it constitutes an offense against the person. Falden v. Comm. 167 Va 542, 189 SE 326. Accordingly, we must conclude that the omission of an allegation that the accused stole property from the person or in the presence of Corporal Ogo constituted a fatal defect. Ward v. State, 34 Okla Cr 296, 246 Pac 664; People v. Ho Sing, 6 Cal App 752, 93 Pac 204; Henderson v. State, 172 Ala 415, 55 So 816; Smith v. State, 82 Miss 793, 35 So 178; United States v. Rominger, 1 CMR(AF) 783; 77 CJS, Robbery, § 39.

Government counsel have sought to persuade us that, by implication, the specification does in fact allege a taking from the person or presence of another —and especially is this true, they argue, since the offense was charged as a violation of Article 122 of the Code. It must be admitted that mention of the Article which forms the statutory basis for the imposition of criminal liability can assist at times in relieving possible ambiguities in the statement of an offense. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 147-8. Constantly, however, this Court has looked primarily to the words of the specification, rather than to the designation of the Article alleged to have been violated, in determining what offense, if any, has been alleged. United States v. Deller, 3 USCMA 409, 12 CMR 165; United States v. O'Neil, 3 USCMA 416, 12 CMR 172.

Nor is there logical basis for the inference which the Government assures us is inherent in the words of the specification. Almost any larceny will be "against the will" of the victim, and thus we find nothing in this specification language which connotes the personal presence of the victim at the time of the wrongful taking. Similarly a victim may be "put in fear" through threats communicated to him from afar —and this is frequently the case in instances of extortion. Thus, nothing in the allegation of the victim's fear implies that the ultimate taking was from the presence or the person of that victim. Indeed, situations can be hypothesized with ease in which the extortioner never confronts his victim. And the same is true of the words "steal from." Those comport with larceny, which, while an ingredient of robbery, is a wholly different and less serious crime.

To accept in the case at bar the result urged by the Government would lend this Court's sanction to defective, careless, and misleading pleading, which does not—even by broadest implication—contain all elements of the offense the accuser purported to charge. Only recently—and unanimously—we declined to give such sanction in a similar instance. United States v. Fout, 3 USCMA 565, 13 CMR 121. In light of this recent precedent, as well as the governing words of the Manual, supra, we see no reason to take a different position now—however compelling the evidence of record that the accused was guilty of robbery.

III

The second question certified by The Judge Advocate General was made contingent on a holding that robbery was alleged in the specification with which we are concerned. In light of our negative answer to the first inquiry, we shall move to the third Government contention—which is that the record of trial may properly be held to support a conviction of guilt of a specially-

tailored included offense. This crime is presented to us as the taking of property through putting a victim in fear, and with an intent to deprive him of his property either temporarily or permanently. Article 134, Uniform Code of Military Justice, 50 USC § 728—says the Government—includes this offense, since service-discrediting conduct is involved; and the punishment—its representatives argue—would necessarily be the same as that provided for robbery, since it is so closely related thereto. Manual, supra, paragraph 214. This very contention illustrates the danger which motivated in part our refusal to find violations of Article 134 of the Code in instances where Congress has dealt specifically with the area of conduct affected. United States v. Norris, 2 USCMA 236, 8 CMR 36; United States v. Johnson, 3 USCMA 174, 11 CMR 174. To grant the contention in its full-blown form would inescapably result in a removal, a whittling away, from offenses of distinct elements which Congress unquestionably intended those offenses to contain—yet with punishment assessed on the same basis as if the accused properly had been charged with, and convicted of, the principal offense. It should be obvious that we cannot possibly accept such a position and such a result.

## IV

It is clear that the specification in the case at bar suffices to *allege* the crime of simple larceny— ▮▮▮▮▮▮ ▮ for the reason that it contains the word "steal" which is the core of the typical larceny specification. Manual, supra, Appendix 6c, sample specification 89. The evidence in the case was indeed ample to sustain a finding of guilt of larceny. In truth, it would have been sufficient to sustain the offense of ▮▮▮▮▮ ▮ robbery, had that crime been properly alleged. However, the instructions supplied by the law officer failed completely to advise the members of the court that, for a finding of guilt of larceny, there is required an intent permanently to deprive the owner of the use of his property. The Government has insisted, however, that since the accused's defense centered on mistaken identity, no issue was raised concerning the question of intent. Therefore—the argument continues—there was no critical issue as to whether a larceny had occurred, but only one as to the accused's participation therein. Accordingly the conclusion is reached that the accused could not have been prejudiced in any wise through a failure to direct the court's attention to a requirement of intent permanently to deprive the victim of his property. We must deny emphatically the validity of this argument. In light of prior decisions, we cannot sanction a failure to instruct concerning every element of the principal offense alleged in a specification. United States v. Clay, 1 USCMA 74, 1 CMR 74.

A somewhat more plausible contention is that, by implication, and in view of clear evidence that the accused was guilty at least of larceny, the law officer's instruction did in fact advise the court—however inartfully—that one element of this offense was an intent permanently to deprive the victim of his property. Cf. State v. Deschamps, 118 Mont 556, 168 P2d 335; Westerman v. State, 144 Tex Cr 101, 161 SW2d 95. In presenting the elements of the offense charged, the law officer made use of the term "steal," which, as heretofore mentioned, is frequently availed of in pleading larceny. Moreover, several civilian cases have pointed out that " 'steal' means to take away from one in lawful possession without right with the intention to keep wrongfully." See, e.g., Irving Trust Company v. Leff, 253 NY 359, 171 NE 569; Morissette v. United States, 342 US 246, 72 S Ct 240, 96 L ed 288. We cannot fail to observe, however, that, even in construing pleadings, "steal" is not always deemed to "designate technical larceny, but means simply 'to take without right or leave' ". United States v. Trosper, 127 Fed 476 (DC Calif) ; United States v. Lamphere, 3 CMR 531. And in a general sense it may be used to designate any wrongful conversion. 32 Am Jur, Larceny § 2, page 886. Therefore, we must regard the word "steal" as being ambiguous and much too un-

**207**

certain in meaning to serve to inform the court-martial that, for a finding of larceny, its members must necessarily find an intent permanently to deprive the victim of his property. Under the Government's conception of the meaning manifested by use of the term "steal," it would be possible for a law officer fully to advise the court in a larceny case by informing its members only that they need find that the accused "stole" property of value from the person alleged. We are sure that such rudimentary instructions do not constitute compliance with the requirement that a law officer charge on the elements of the offense charged—nor do we think that the instructions given in the case at hand constituted a sufficient compliance.

## V

It follows from what has been said that the first and third certified questions must be answered in the negative. Accordingly, the record of trial is returned to The Judge Advocate General, United States Army, for action not inconsistent with this opinion. The board of review has ordered a rehearing of the charge of larceny, which it properly held to have been embraced within the specification before us. It is to be noted, however, that nothing said herein is intended to preclude trial of the accused at the directed rehearing on any charge which may hereafter be preferred seeking to take into account the force which the record suggests was the instrumentality for effecting the larceny.

Judge LATIMER concurs.

QUINN, Chief Judge (dissenting):

I dissent.

If the theft involved is not committed from the person or in the presence of the victim, the offense is not robbery. Moreover, a specification which fails to set out this essential element, directly or by clear implication, does not allege robbery; and a finding of guilty returned under such a specification does not amount to a conviction for robbery. Cf. United States v. Fout, 3 USCMA 565, 13 CMR 121. The specification with which we are concerned here fails to allege directly the element of "from the person" or "in the presence" of the victim. However, the language of the specification clearly implies this element. It is alleged that the accused "did . . . by means of putting him in fear, steal from Corporal Francisco D. Ogo . . . against his will." The phrase "steal from" as here used is susceptible to two possible meanings. The first is "from his person." It may also be interpreted to mean from his constructive possession which is not necessarily "in his presence." This possible ambiguity the accused was free to attack in the trial forum by appropriate motion. The inartfulness of the pleading did not result in complete failure to allege an offense. Consequently, the accused's failure to challenge it in the trial court requires determination of first whether there was a fair risk that he was misled, and, second whether the specification, together with the evidence, was sufficient to provide protection against subsequent prosecution for the same offense. United States v. Marker, 1 USCMA 393, 3 CMR 127; United States v. Snyder, 1 USCMA 423, 4 CMR 15; United States v. Steele, 2 USCMA 379, 9 CMR 9; United States v. Simpson, 2 USCMA 493, 9 CMR 123; United States v. Sell, 3 USCMA 202, 11 CMR 202; United States v. Karl, 3 USCMA 427, 12 CMR 183.

There is no possibility that the accused was misled in this case. Neither is the specification, taken together with the record of trial, insufficient to protect him against a second prosecution for the same offense.

The specification was laid under Article 122, Uniform Code of Military Justice, 50 USC § 716, which defines the crime of robbery. Although this alone is not sufficient to put an accused on binding notice (United States v. Deller, 3 USCMA 409, 12 CMR 165), it is an indication which cannot be completely ignored. At the opening of the trial, the trial counsel announced that the general nature of the charge in this case was robbery. Immediately thereafter the accused was advised "that any motion to dismiss any charge or

to grant other relief should be made at this time." His counsel said that the accused had no motions to make, and a plea of not guilty was entered. Following this, the prosecution introduced evidence of every essential element of the offense of robbery, including a statement of the accused proving beyond all question that his acts were committed both in the presence of and upon the person of the victim. No effort was made by the defense to negative the commission of the crime of robbery. Its efforts were directed only to impeaching the victim's identification of the accused. Finally, during the course of his instructions, the law officer outlined the essential elements of robbery as delineated in paragraph 201, Manual for Courts-Martial, United States, 1951, and made two specific references to "robbery" as the offense charged. No objection was made to these instructions. Neither the accused nor his counsel indicated any surprise at any stage of the trial procedures.

Under these circumstances, the language of this Court in United States v. Karl, supra, is particularly appropriate:

"While a failure to attack a specification because it does not state an offense cannot be waived, a neglect to attack it for other reasons can. If the specification is so inartfully drawn that the accused runs a fair risk of being misled, an appropriate motion will permit the issue to be framed properly. However, an accused cannot gamble on overlooking uncertainty at the trial level and then succeed in asserting it on appeal. If he claims he is uninformed on appeal, he must have been unenlightened before he entered his plea and the appropriate time to litigate that issue is before plea is entered. If an accused does not exercise his right to have the specification clarified at that time, in the absence of a miscarriage of justice, he waives his right to complain on appeal."

The cases relied upon by the majority to support the reversal of this conviction are hardly in point. In People v. Ho Sing, 6 Cal App 52, 93 Pac 204; Ward v. State, 34 Okla Cr 296, 246 Pac 664; and Hill v. State, 145 Ala 58, 40 So 654, relied upon by the court in Henderson v. State, 172 Ala 415, 55 So 816, the indictments upon which the defendants were tried and convicted, were attacked in the trial courts. Under the circumstances there was, of course, no waiver. In Smith v. State, 82 Miss 793, 35 So 178, the indictment failed to set out that the persons robbed were put in fear, or that the personal property was taken from their persons. The trial judge's instructions followed the terms of the indictment. Although no attack was made on the indictment in the trial forum, the Supreme Court of Mississippi reversed the conviction because of the erroneous instructions.

For the foregoing reasons, I would answer the first certified question in the affirmative and reverse the decision of the board of review.