UNITED STATES, Appellee

v.

JEREMIAH McCARTHY and RADNEY N. WILKINSON,
Privates E–1, U. S. Army, Appellants

4 USCMA 385, 15 CMR 385

No. 3577

Decided May 28, 1954

MAJ Edwin Doran, U. S. Army, CAPT Willliam C. Irby, Jr., U. S. Army, 1ST LT Wade J. Dahood, U. S. Army, and 1ST LT Richard B. Dempsey, U. S. Army, for Appellants.

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused were tried by general court-martial for breach of parole, wrongful appropriation of a motor vehicle, and the transportation of that vehicle, in violation of the Dyer Act, 18 USC § 2311, et seq. Each entered a plea of guilty to the first offense and not guilty to the others. Both were convicted of all offenses and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The convening authority approved the sentence, but suspended the execution of the dishonorable discharge. A board of review affirmed the findings of guilty and modified each sentence by reducing the period of confinement to three years. We granted review to determine whether the appropriation of a vehicle with intent temporarily to deprive the owner of its possession is within the definition of a "stolen" vehicle under the Dyer Act.

Following our grant of review, each accused filed a petition for a new trial on the ground that fraud █ had been perpetrated upon the court-martial in the presentation of perjured testimony by the owner of the vehicle. The petitions are supported by a statement from the owner of the vehicle. Although the statement bears the seal and signature of a notary public, it does not appear that the declarant made the statement under oath. Putting aside that omission, the owner now declares that with "my consent [the accused] left Ft. Mc-Pherson and went home." No facts are recited which would tend to support the truth of the present statement as against the owner's sworn testimony. The record, however, contains many facts to show a wrongful appropriation. Among these are the owner's report to the CID that his car was stolen, the distance travelled by the accused, and the place and circumstances under which the car was abandoned by them. The

owner's present statement impresses us as a belated attempt to assist the accused who were, and perhaps still are, his friends. It falls far short of establishing the claim of fraud. Accordingly, we deny the petitions for a new trial.

Turning to the issue raised by the petition for grant of review, the accused argue that the Dyer Act does not apply to the transportation of a motor vehicle which was appropriated with an intent temporarily to deprive the owner of its possession or use. The Act reads follows:

> "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." [18 USC § 2312.]

Speaking of the Act, the Court of Appeals in the Tenth Circuit, in Hite v. United States, 168 F2d 973 (1948), said (page 974):

> ". . . The National Motor Vehicle Theft Act does not define the term 'stolen' used therein. When a Federal criminal statute uses a term known to the common law and does not define that term, the courts will apply the common-law meaning of the term, unless the context indicates a contrary intent on the part of Congress.
>
> •　•　•　•　•　•　•
>
> "The word 'steal' in a criminal statute ordinarily imports a common-law offense of larceny."

However, in United States v. Adcock, 49 F Supp 351 (WD Ky 1943), Judge Miller, later Judge of the Court of Appeals, Sixth Circuit, held that the statute was intended to apply not only to a technical common law larceny, but to every theft within the usually accepted meaning of the term. This case was cited as decisive authority in Davilman v. United States, 180 F2d 284 (CA 6th Cir 1950), which in turn served as precedent for the Court of Appeals in the Second Circuit in United States v. Sicurella, 187 F2d 533 (CA 2d Cir 1951). In both Davilman and Sicurella the defendant lawfully obtained possession of the vehicle, but thereafter transported it across state lines, and by his conduct demonstrated that he intended *permanently* to deprive the owner of the vehicle.

A careful analysis of the Adcock opinion indicates that the court considered "stolen" to be only such taking as is accompanied by an intent permanently to deprive the owner or lawful possessor of the use of the vehicle. To illustrate the nature of an offense under the Dyer Act, the court distinguished between McKenzie v. Travelers' Fire Ins. Co. of Hartford, Conn. 239 Ky 227, 39 SW2d 239, and Federal Ins. Co. v. Hiter, 164 Ky 743, 176 SW 210. These cases were suits for recovery for theft of an automobile under a policy of insurance. In McKenzie, the car was taken without consent, but returned the next morning in a damaged condition. No recovery was allowed. In Hiter, the car was obtained with permission but the borrower then attempted to sell the vehicle; when the attempt failed, he took it to another state where it was discovered six to eight weeks later in a damaged condition. Recovery under the policy was allowed. The difference in result, as explained in McKenzie, turned on the absence of an intent permanently to deprive the owner of his car in the one case, and the presence of that intent in the other.

Without analyzing the other Federal cases, it plainly appears that the word "stolen" is given a meaning that includes every offense that may commonly be regarded as a theft, regardless of whether it is technically common law larceny. Collier v. United States, 190 F2d 473 (CA6th Cir 1951); United States v. Sicurella, supra. However, no case has been cited to us, and we have found none, which supports a conviction for the transportation of a vehicle taken only with intent *temporarily* to deprive the owner or possessor of its use. The Adcock case, supra, argues against inclusion of such conduct under the Dyer Act. So, too, does the Congressional background of the statute.

In recommending passage of the bill, the House Committee on the Judiciary reported as follows:

**387**

"The Congress of the United States can scarcely enact any law at this session that is more needed than the bill herein recommended, and that has for its purpose the providing of severe punishment of those guilty of the stealing of automobiles in interstate or foreign commerce. There has been and is now a most widespread demand for such a law. State laws upon the subject have been inadequate to meet the evil. Thieves steal automobiles and take them from one State to another and ofttimes have associates in this crime who receive and sell the stolen machines. The losses to the people of the United States by reason of this stealing amounts to hundred of thousands of dollars every year. It is getting worse. It is getting so now that it is difficult for the owners of the cheaper cars to obtain theft insurance, due to the great loss that insurance companies have sustained. During the past year automobile-theft insurance on this class of cars has increased 100 per cent. It is automobiles of that price that are generally stolen. Automobile thieves who make a specialty of this crime do not steal many of the higher priced cars, the reason being of course that they are not so easily sold. I submit the following table in proof of the above statement relative to the increased cost, etc., of automobile-theft insurance:

. . . . . . .

"The power of the Congress to enact this law and to punish the theft of automobiles in one State and the removing of them into another State can not be questioned, in view of laws of similar nature heretofore enacted by Congress and the decisions of the Supreme Court of the United States touching same." [House Report No. 312, 66th Congress, 1st Session, on H.R. 9203.]

It is evident that the words "stolen," and "theft," are used interchangeably. It is equally evident that the draftsmen of the bill had in mind the sort of theft that would come under the automobile-theft insurance policy. That is exactly the idea expressed in the Adcock case

in Judge Miller's reference to McKenzie v. Travelers' Fire Ins. Co. of Hartford, Conn., supra, and its requirement that the appropriation be accompanied by an intent permanently to deprive the owner of the use or possession of the vehicle. See also: Van Vechten v. American Eagle Fire Ins. Co., 239 NY 303, 146 NE 432.

The word "theft" has been used as the popular name for larceny, State v. Stewart, 22 Del 435, 67 Atl 786. It has also been used to include not only a technical definition of larceny but swindling and embezzlement. People v. Pillsbury, 59 Cal App2d 101, 138 P2d 320. In civilian jurisdictions, the intent required for these offenses may vary. Cf. 18 Am Jur, Embezzlement § 26, and Article 121, Uniform Code of Military Justice, 50 USC § 715, Manual for Courts-Martial, United States, 1951, paragraph 200. However, the history and Federal judicial interpretation of the Dyer Act show that the Act requires a taking with an intent permanently to deprive the owner or possessor of his property. Necessarily, if the intent of the taker is less than that of permanent deprivation, the offense is not made out. Accordingly, we hold that "stolen," within the meaning of the Dyer Act, does not include appropriation of a vehicle with the intent temporarily to deprive the rightful owner or possessor of its use. Since the accused here were found guilty only of appropriation with the intent temporarily to deprive, no violation of the Dyer Act appears. See: United States v. Kratz, 97 F Supp 999 (D Neb 1951).

The decision of the board of review, insofar as it affirms the findings of guilty of the charge of transporting a stolen vehicle under the Dyer Act, is set aside, and the charge is ordered dismissed. The case is returned to The Judge Advocate General for submission to a board of review for consideration of an appropriate sentence.

Judge LATIMER concurs.

BROSMAN, Judge (concurring):

I concur with the author of the principal opinion.

388

## II

The Dyer Act punishes one who "transports in interstate or foreign commerce a motor vehicle or aircraft knowing the same to have been stolen." 18 USC § 2312. The word "stolen" has received conflicting interpretations. In Hite v. United States, 168 F2d 973 (CA 10th Cir), it was equated to common law larceny. This, in turn, was characterized as the "carrying away from any place, at any time, the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner." Ex parte Atkinson, 84 F Supp 300 (ED SC).

Another court, in construing the term "stolen," adopted as its test the larceny statute of the state from which the vehicle was taken. Carpenter v. United States, 113 F2d 692 (CA8th Cir). Thus, where a bakery truck was taken in Minnesota and transported to Iowa, Minnesota legislation was scrutinized to determine whether the truck had been "stolen" within the meaning of those statutes. Idem.

A third line of cases holds that "stolen," as used in the Dyer Act, is not to be limited to situations which at common law would have constituted larceny, but instead includes the taking of the motor vehicle of another "for one's own use without right or law . . . regardless of how the person so taking the automobile may have originally come into possession of it." Collier v. United States, 190 F2d 473 (CA 6th Cir); United States v. Sicurella, 187 F2d 533 (CA 2d Cir); Davilman v. United States, 180 F2d 284 (CA 6th Cir); United States v. Adcock, 49 F Supp 351 (WD Ky).

In my view the Dyer Act must be construed along the lines followed in the cases cited last above. In light of the evil against which Congress was legislating in the Act under consideration, I very much doubt that it was intended to limit the prosecution of "skip car artists" in accordance with definitions of common-law larceny. As for the suggestion that state laws furnish the guide, I am persuaded by the view that "Congress will not be presumed to have grounded a general penal statute upon the heterogeneous penal provisions of the several states unless the Congressional intent to do so is clearly indicated." United States v. Handler, 142 F2d 351 (CA2d Cir).

## III

However, the construction of "stolen" so as to include situations other than that of common-law larceny poses difficulties within the context of the issue now before the Court. There seems little doubt that the offense of larceny at common law required an intent permanently to deprive the owner of his property. See, e.g., 2 Burdick, Law of Crime, §§ 496c, k; 497; 540; 542; 546; Branson, Instructions, Criminal Offenses §§ 3916, 7. On the other hand, the crimes of embezzlement and false pretenses apparently did not require such an intent. See authorities collected in United States v. Krawczyk, 4 USCMA 255, 15 CMR 255; 2 Burdick, supra, § 586; 18 Am Jur, Embezzlement § 26; 22 Am Jur, False Pretenses § 23. If this is true, then should the determination of the essentiality of an intention permanently to deprive the owner of his vehicle turn on whether the car was "stolen," in the sense of common-law larceny, or whether instead it was, say, embezzled? Cf. United States v. Krawczyk, supra.

My conclusion is that—at least so far as military law is concerned—an intent permanently to deprive the owner of his property must be demanded in every instance. I agree fully with the majority that United States v. Adcock, supra—which seems to be the leading case in the line extending "stolen" beyond the ambit of common-law larceny —did not intend to dispense with this requirement. Moreover, I observe that certain statutes closely related in subject matter to the Dyer Act refer to property which has been "stolen or converted." See 18 USC §§ 2314, 2315. This latter term—much more than the word "stolen"—tends to remove any requirement of an intent permanently to deprive the owner. Therefore, the

**389**

omission of such language from the provisions of the Dyer Act cannot safely be ignored. Finally, the customary association of "stolen" with common law larceny, which in turn demands proof of an intent permanently to deprive the owner of property, suggests that such an intent must be deemed to constitute an element in a Dyer Act offense.

While "joyriding" does indeed afford a hazard to the owner of a motor vehicle, it does not present that evil toward which the Dyer Act was chiefly aimed—namely, the harm arising from the operations of interstate rings of professional car thieves. Incidentally, the military "joyrider" occupies no bed of roses—for the Manual's Table of Maximum Punishments permits a penalty of dishonorable discharge and two years' confinement at hard labor, plus total forfeitures, for the wrongful appropriation of a motor vehicle, in violation of Article 121 of the Uniform Code, 50 USC § 715.

In Kratz v. United States, 97 F Supp 999 (D Neb), the defendant in a Dyer Act prosecution entered his plea of guilty as follows:

". . . I didn't know the motor vehicle had been stolen. I rented it at the place, but I did misappropriate it. I kept it too long, and so forth, and apparently I am guilty of the charge; so I am guilty."

In setting aside the sentence and refusing to accept the plea of guilty, the court stated:

". . . He openly asserted that the automobile was not stolen and thereby denied an essential element of the crime. And his further statements as to misappropriation do not establish that the automobile was 'stolen' within the meaning of the Dyer Act."

The court in Kratz cited both the Adcock and Hite cases, supra. Thus, it seems clear that its result did not hinge on any notion that the term "stolen" required a showing of common-law larceny. In light of this case, as well as the considerations mentioned earlier, I must join with the majority in concluding that, to convict under the Dyer Act, the prosecution must establish that the motor vehicle involved had been taken from its owner with an intention permanently to deprive him of its use.