UNITED STATES, Appellee

v

WILLIAM W. LORENZEN, Private E-2,
U. S. Army, Appellant

6 USCMA 512, 20 CMR 228

No. 6620

Decided November 18, 1955

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Joseph L. Chalk* and *Captain Frank C. Stetson.*

*First Lieutenant Edward S. Nelson* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted by a general court-martial on a specification alleging that he opened a package addressed to another before the package was received by the addressee, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to dishonorable discharge, total forfeitures, and confinement for one year. Intermediate reviewing authorities affirmed both findings and sentence, and we granted review to determine the sufficiency of the specification to allege an offense. The facts of the case are immaterial and will not be set forth.

The accused was arraigned and tried on a specification which reads as follows:

"In that Private E-2 William W. Lorenzen, U. S. Army, Battery 'C', 196th Field Artillery Battalion, APO 358, did, at APO 358, on or about 23 October 1954, wrongfully and unlawfully open a certain package addressed to Private First Class Orlene H. Fretty, which said package was then in the custody of the said Private E-2 William W. Lorenzen, before said package was actually received by the person to whom it was directed."

At the time of the arraignment, defense counsel moved to dismiss the specification, urging that it failed to state an offense because it did not allege that the package in question was "mail matter," or had previously been committed to the care of an agency engaged in the transmission of parcels or communications. The law officer denied the motion, and we hold his ruling was erroneous.

We have earlier set forth the essential requisites of a pleading, saying, in United States v Sell, 3 USCMA 202, 206, 11 CMR 202:

". . . The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

In United States v Karl, 3 USCMA 427, 12 CMR 183, and United States v Fout, 3 USCMA 565, 13 ██ CMR 121, we recognized a difference in relative importance among the three factors set forth above by noting that the failure of the specification to allege an offense may be raised at any time. That principle has long been recognized in military and Federal law, and so the importance of setting forth sufficient facts to allege an offense cannot be

**514**

overemphasized. Failure to do so vitiates a conviction.

The Manual for Courts-Martial, United States, 1951, does not contain a discussion of the elements of postal offenses, █ but two form specifications are provided (Appendix 6c, page 492, Nos. 151, 152), and both include recommended allegations substantially to the effect that the item stolen, opened, or otherwise tampered with was "mail matter." Turning to the Table of Maximum Punishments (paragraph 127c of the Manual), the offense sought to be charged here is specifically entitled, "Mail matter in the custody of the Post Office Department or in the custody of any other agency, or not yet delivered or received: taking, opening, abstracting, secreting, destroying, stealing, or obstructing." When analyzed, it becomes crystal clear that three separate categories are outlined in the description of the offense. They are as follows: (1) mail matter in the custody of the Post Office Department; (2) mail matter in the custody of any other agency; and (3) mail matter not yet delivered or received. This language is plain and unequivocal and, when considered together with provisions of similar tenor found in the 1949 Manual for Courts-Martial, is persuasive evidence that military authorities have, at least since then, regarded interference with the mail to be the very essence of the offense sought to be charged in this case. The Staff Judge Advocate seemed to recognize this, for in his review he said: "The gravamen of the offense charged in the instant case is tampering with mail matter."

When we turn to relevant military case holdings, we find that our views are not without precedent. In United States v Smith, 10 CMR 262, reversed on other grounds, 4 USCMA 369, 15 CMR 369, the accused was charged with stealing a package, addressed to another, before the package was delivered. Admittedly, the specification was sufficient to allege a larceny, but as to the precise offense involved here, it was held by the board of review:

"But there is an additional element in the crime of larceny of mail matter; that is that the thing stolen is *mail matter*. . . ."

The basic Federal statute designed to protect the Postal Service which is pertinent here is 18 USC § 1702. This enactment was based on 18 USC, 1940 ed, § 317, and provides:

"Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

Both parties before us have conceded in their briefs that the military offense was patterned upon this statute. The differences between the two are the result of problems peculiar to the military. The basic Federal act quite clearly requires that the object be "mail matter" in the custody of the United States Postal Service or its agents, and the changes made to tailor the offenses to the needs of the military community do not eliminate that requirement. Thus we take it as established that the character of the matter tampered with or obstructed as within the aegis of the Postal Service, or its military counterpart or supplementary service, must be alleged in the specification, either directly or by fair implication, to render the allegation immune to attack.

It is considered appropriate to observe at this point that the military offense of tampering with ▮▮▮▮▮ ▮ or obstructing the mail is not, in our view, the precise offense set forth in 18 USC § 1702, although the pattern is similar. Each serves a separate and useful function, but the military offense must include military channels which do not operate under the Post Office Department. A letter or package mailed by a serviceman does not come under the protection of 18 USC § 1702 until such time as it leaves the military postal center and enters the channels of the United States Postal Service. Department of Defense Bulletin 19-II-50, November 2, 1950. Hence the deterrent of military prosecution is the sole protection afforded such mail prior to that time. In addition, the individual serviceman does not customarily have his own letter box, and therefore the military sanction, to be of any real effectiveness, must run to the point where the mail is actually placed in the hands of the recipient. Moreover, correspondence transmitted through official military channels which never passes through the hands of the Postal Service might well be regarded as "mail matter" for the purposes of the offense in violation of Article 134. That question is not now expressly before us, and need not finally be decided, but it points up one reason why the military offense must cover services not contemplated by the basic act. These matters aside, the two statutes, though distinct, are sufficiently similar to bear comparison insofar as essential elements are concerned.

Government counsel contend that even if the character of the package as an item in mail channels is ▮▮▮▮▮▮ ▮ an essential element of this offense, that ingredient was alleged here by fair implication. To support that theory, they rely upon United States v Benson [CM 364188], 11 CMR 568, and United States v Reese [CM 368292], 14 CMR 387. If those cases go that far—and they seem to—then we do not choose to follow their reasoning.

In the Benson case, supra, the accused was charged with stealing nine letters before they were received by the addressees. Although conceding that "the gravamen of the offense is stealing mail matter," the board of review held the allegation that the items taken were "letters" stolen "before said letters were actually received by the person to whom they were directed" satisfied that requirement.

In United States v Reese, supra, the

accused was charged with wrongfully opening letters and a package addressed to another prior to the time they were received by the addressee. The board of review specifically stated, "The clear connotation of the words 'letter and a package . . . before they were delivered' is that the items were mail matter, and we therefore hold that the specification alleged that fact."

In construing pleadings, we have always been willing to give effect to those matters which are fairly within the wording of a specification, but the difficulty with the Government's cases is that they indulge in an interpretation which is far too liberal. More in accord with our views is the case of United States v Smith, supra, where the specification charged the accused with stealing a package before it was received by the person to whom it was directed. The board of review held that the failure to allege that the package was "mail matter" was fatal, saying:

". . . Neither the word 'package', nor the word 'addressed', nor the allegation that the package was taken from the message center, fairly alleges that the thing stolen was ever in the mail, or intended for the mail. For aught the specification shows, the thing allegedly stolen was a package having no connection with the mail. The fact that the evidence shows that the package had been received in the message center by mail for delivery to the addressee is not sufficient to cure this defect in the specification since the language thereof omits the very element necessary to constitute the aggravated offense. The missing element may not be supplied by the evidence or the findings. . . ."

Because we have found that the military offense of interfering with the mails was borrowed, quite literally, from those statutes enacted to protect the United States Postal Service, we turn to a Federal District Court holding, and we find it supports our views. In United States v Askey, 108 F Supp 408 (SD Tex) (1952), the defendant was charged with a violation of 18 USC § 1708 (a statute identical to § 1702, quoted supra, except that it makes punishable a theft, rather than a mere taking), which makes punishable the act of stealing or abstracting any letter or its contents from a letter box or other authorized depository for mail matter. The pertinent count of the indictment alleged that the "defendant unlawfully abstracted and removed 'from a letter addressed to . . . [X] * * * the contents of such letter' . . . ." The District Court continued:

". . . There is no allegation that the letter, from which defendant abstracted the treasury check, was a *mailed* letter or one which had been removed from some office, station, letter box, receptacle or authorized depository. The language last quoted above from the statute prohibits the abstracting or removing from 'such letter,' clearly referring back to the first part of the statute, dealing with letters *in the mails,* or taken from some post office, receptacle or depository. In other words, it would be no offense to remove the contents of a letter never deposited for mailing or transmitted through the mails; yet, that is all that is charged in Count 2. It charges no offense."

As we read the specification in this case, it would be possible for the Government to prove an offense by showing the following: that a person had addressed a package; that he had no intent to let it find its way into any channels of official delivery; that he left it on the addressee's bunk or footlocker in his absence; and that the package was opened before the addressee returned. Assuming some sort of trespass, the Government would have us hold that a mail offense, punishable by a term of confinement up to five years, was established by that showing. We are sure that would be an outrageous holding for an act which is not alleged to amount to as much as a wrongful appropriation. To hold that the word "letter" or "package" necessarily connotes that the property was mail matter, in mail channels, or in the care of an agency engaged in transmitting communications, would do vio-

lence to the language itself and be a resort to forced construction to escape the effect of insufficient pleading, where that insufficiency was called to the attention of the law officer at the time of arraignment. This we are unwilling to do.

As a last resort, Government counsel contend that even though the specification is insufficient to allege ▮▮ an offense against the mail, it adequately sets forth a disorder under Article 134. This argument is grounded on the notion that the mere act of opening a package belonging to another is per se a disorder to the prejudice of good order and discipline. However, we are unable to accept this reasoning which is so vigorously advanced. To the extent that such an act amounts to wrongful appropriation or larceny, Article 134 has been preempted by Article 121 of the Code. United States v Norris, 2 USCMA 236, 8 CMR 36. If neither of these possible violations is bound up in the charge, it is difficult to imagine what act which had any impact on good order or discipline would remain. Certainly counsel have been unable to point to any other case in military law which has reached that result. As this Court said in the Norris case, supra:

". . . We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134."

We, therefore, conclude that the specification fails to allege an offense. The proceedings against the accused are thereby rendered null and void. Manual for Courts-Martial, United States, 1951, paragraph 87a (2). Accordingly, the decision of the board of review is reversed, and the charges are dismissed.

Chief Judge QUINN and Judge BROSMAN concur.