UNITED STATES, Appellee

v

ROBERT B. PHILLIPS, Private First Class, U.S. Army, Appellant

7 USCMA 737, 23 CMR 201

*Major Frank C. Stetson* and *First Lieutenant Robert J. Hearon, Jr.,* were on the brief for Appellant, Accused.

*Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Edward S. Nelson* were on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to nineteen offenses, consisting of a breach of arrest, an absence without leave, eight larcenies, eight dishonorable failures to maintain sufficient funds in a bank account, and one larceny from the mails—in violation of the Uniform Code of Military Justice, Articles 95, 86, 121, and 134, 10 USC §§ 895, 886, 921, and 934, respectively. He was sentenced to dishonorable discharge, total forfeitures, and confinement for fifteen years. The convening authority approved only so much of the confinement as provided for a term of ten years, and the board of review made a further reduction to five years, both agencies otherwise affirming the findings and the sentence. Thereafter, accused sought review here, and we granted his petition on the sole issue of whether the specification upon which he was convicted of larceny from the mails alleges an offense.

The facts are not material to our inquiry, so we pass on to consider the specification which purports to allege an offense against the mails under Article 134 of the Code. It reads:

"In that Private First Class Robert B. Phillips, U. S. Army, 47th Anti-Aircraft Artillery, 5th Infantry Division, attached Headquarters Section, 3400th Area Service Unit, did, on or about 31 October 1955, wrongfully and unlawfully steal certain letters, addressed to the Commanding Officer of Headquarters Section, 3400th Area Service Unit, an official agency for the transmission of communications, then in the Orderly room of Headquarters Section, 3400th Area Service Unit, before they were actually received by the persons to whom they were directed."

It is the contention of appellate defense counsel that the specification is deficient in that it fails to allege that the letters taken were mail matter, and that they were in the custody of an official agency for the transmission of communications at the time they were taken. They conclude, therefore, that the specification fails to charge an offense against the mails and that accused's conviction under that specification must be overturned.

This Court has been called upon before to decide the sufficiency of a specification to allege a postal offense under Article 134 of the Code. In United States v Lorenzen, 6 USCMA 512, 20 CMR 228, we set forth the following:

". . . the character of the matter tampered with or obstructed as within the aegis of the Postal Service, or its military counterpart or supplementary service, must be alleged in the specification, either directly or by fair implication, to render the allegation immune to attack."

There, the specification alleged only the opening of a package, addressed to a designated individual, which package was in the custody of another individual, before it was received by the addressee. We found that specification to be insufficient, saying:

". . . To hold that the word 'letter' or 'package' necessarily connotes that the property was mail matter, in mail channels, or in the care of an agency engaged in transmitting communications, would do violence to the

language itself and be a resort to forced construction to escape the effect of insufficient pleading, where that insufficiency was called to the attention of the law officer at the time of arraignment. This we are unwilling to do."

Recently, in United States v Scioli, 7 USCMA 502, 22 CMR 292, we had occasion to clarify our holding in Lorenzen. In that case, the specification alleged the theft of a letter addressed to an individual, from the custody of another, who was an official agency for the transmission of communications, before it was received by the addressee. The board of review had dismissed the action because it concluded that the specification did not allege the letter in question to be mail matter. We reversed the board of review, saying:

"It would seem that the board of review in this case attached special importance and significance to the words 'mail matter' or 'Postal Service,' terms which may be found in Lorenzen, and therefore concluded that, absent some such descriptive phrase, the specification must fail. Yet we ourselves did not intend to imply that a pleader must, a priori, characterize the subject matter in those terms. We intended to, and did, say no more than that the specification must in some fair manner indicate that a written communication had been deposited for delivery within an official channel for such matters, and that it had been tampered with or taken while in that channel, if it was to be sufficient to allege an offense against the mails.

. . . . .

"When we turn to the present specification, we find that it alleges the theft of a letter addressed to the post commander, before the letter was received by the person to whom it was directed, and while it was in the custody of Sergeant Odell Bowling, who was an official agency for the transmission of communications. It is true that at no point do the words 'mail matter' appear in the pleading before us, but it is apparent from the terms of the specification that a letter was in the

hands of one charged with the transmission of communications of that kind at the time when it was intercepted by the accused. In this connection, we point out that the opening of a package, as was alleged in Lorenzen, supra, does not really imply interference with mail matter, but the word 'letter' has a more definite connotation in that regard. In Webster's New International Dictionary, Second Edition, page 1419, the word 'letter' is defined, in one sense at least, as 'a written communication, usually sealed, such as those forming the main body of the first class of mail matter.' Clearly, the use of that word in this specification suggests, by fair implication, that the missive was mail matter. . . . when a specification alleges the theft of a letter, addressed to a designated individual, from the custody of an official Government agency for the transmission of that form of communication, it is sufficient to allege the military offense against the mails covered by Article 134."

Accordingly, it is clear that the validity of the objections advanced by petitioner in the present case depends upon whether or not the questioned specification, fairly construed, alleges that the letter was stolen from the custody of an official Government agency for the transmission of communications, for under our prior holdings, a "letter" taken from such a channel is fairly alleged to be "mail matter."

On previous occasions, we have been required to announce the tests to be applied in ascertaining the ■ sufficiency of a specification, and we believe it is appropriate to reiterate them here. Generally, they are set forth in United States v Sell, 3 USCMA 202, 11 CMR 202, where we said:

". . . The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could

**739**

have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification. For a certainty, appellate tribunals should not permit a pleading to be challenged for the first time on appeal merely because it is loosely drawn."

With these guides in mind, we turn to analyze the specification in question. We note that it alleges the theft of letters addressed to the commanding officer of Headquarters Section, 3400th Area Service Unit, from the orderly room of that Headquarters Section, and before they were received by the addressee. The only question concerns the meaning of and the effect to be given to the phrase "an official agency for the transmission of communications." While it may be, as appellate defense counsel assert, that the position of that phrase in the specification can be taken to indicate that the addressee, or his unit, was the official agency for the transmission of mail, we are sure that the wording is also susceptible of the interpretation that the orderly room, or the Headquarters Section, was the official agency for the transmission of mail. In interpreting the specification, we should, █ if possible, construe the language to give effect to all of the words employed and to harmonize and reconcile them. If we were to hold the phrase identified the addressee as the official agency, the additional language that the letters were taken before they reached him would not make sense. Certainly letters could not be stolen from an officer before he

740

received them. On the other hand, if the questioned phrase identified the headquarters or the orderly room as the official agency, then some semblance of harmony and consistency prevails.

In the instant case, we stress the fact that accused pleaded guilty to all offenses with which he was █ charged, making no attack upon the specification at trial. Rather, he waited until appeal, then assailed the pleading as being a nullity on the basis that it failed to set out all the essential elements of the offense. A close inspection of the specification shows that accused is in error for, even though unclear, each element is mentioned and, at worst, it can only be said that the language of the specification is ambiguous. That being so, then the proper time for accused to raise an objection was at trial where, if he was doubtful of the meaning, he had the opportunity to remedy the situation by making a motion for appropriate relief. As we said in United States v Steele, 2 USCMA 379, 9 CMR 9:

". . . Moreover, when attacked by an assertion that it does not state an offense, the fact that a specification overstates a cause, or does not state an offense as fully or as certainly as should be, is not fatal. The Manual has prescribed a method by which an accused can require a properly worded specification. Awkward, inartful or unnecessary expressions in a charge may be assailed by motion before or during trial but they cannot be the foundation for a reversal in an appellate court when they have not been attacked previously and a plea of guilty has been entered."

While the specification may be interpreted so as to make it absurd, when fairly considered, it alleges: (1) the wrongful theft of letters; (2) the identity of the addressee; (3) the taking from the orderly room of the Headquarters; (4) the interception before delivery; and (5) the involvement of an official agency for the transmission of communications. Such a pleading

satisfies the standard we imposed in Scioli, supra, Accordingly, we hold that the pleading sufficiently alleges the military offense against the mails covered by Article 134.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.