UNITED STATES, Appellee

v

PERCY A. THURMAN, Airman First Class,
U. S. Air Force, Appellant

10 USCMA 377, 27 CMR 451

No. 12,219

Decided May 1, 1959

*Lieutenant Colonel Sam F. Carter, Lieutenant Colonel Robert O. Rollman,* and *Major Dwight R. Rowland* were on the brief for Appellant, Accused.

*Lieutenant Colonel Robert W. Michels* and *Captain John W. Fahrney* were on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted of stealing a package from the mails, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The convening authority reduced the confinement to a period of two years, but otherwise approved the findings and sentence. Following action by the board of review affirming the sentence, we granted the accused's petition for review in which several errors were assigned. Only one of these assignments requires extended discussion.

The specification of the single charge upon which the accused was arraigned and tried alleges that the accused, "did, at Ashiya Air Base, on or about 14 March 1957, *steal* a certain package, addressed to Mister James Burrows, 2832 South West 7th Street, Fort Lauderdale, Florida, which said package was then mail matter in Air Post Office 75, before said package was delivered to the person to whom it was directed." (Emphasis supplied.)

In support of these allegations, the Government adduced evidence tending to show that on March 14, 1957, the accused, a parcel post clerk at the Ashiya Air Base Post Office, took a package from the post office to the home of a Japanese girl asking her to conceal it for him. The package was, in all respects, mail matter and had been accepted by the accused two days earlier; he issued air mail stamps and a receipt for insured mail covering the same.

According to the testimony of the girl, about six weeks after she surrendered the contents of the package— a Nikon camera valued at $162.00—to agents of the Office of Special Investigations, the accused begged her assistance in defending himself against the present charge. He proposed, she averred, that she write to the chaplain explaining that she had received the camera from a gentleman she entertained during the night of March 13, 1957. When the accused observed it in her possession the following night, he told her to get rid of it because it would lead to serious trouble. She complied with his request and mailed a

378

letter setting out this version of the incident. In addition, she sent a letter of similar content to the accused.

After demonstrating the girl's moral laxity in his efforts to impeach her credibility, the accused became a witness in his own behalf. He categorically denied the charge against him, and declared the true version of the manner in which the girl came into possession of the camera was that set out in her letter to him and to the chaplain. He further denied that these expressions were products of his imagination. Indeed, he declared, he could not have seen the girl at the time she described for he had spent that time in Osaka, several miles away.

Other evidence relied upon by both parties as supportive of their respective positions was before the ▪ court-martial, but need not be detailed here. It is sufficient to state that the record, as a whole, reflects substantial evidence tending to establish each essential element of the offense charged. Accordingly, the record does not support the accused's first assignment of evidentiary insufficiency.

The principal assignment urged by the defense relates to the law officer's instructions upon the elements of the crime. After advising the court that, in order to warrant a conviction the evidence must establish, *inter alia*, that "the accused, without authorization, stole a certain package," he undertook to define "steal." He did so in this language:

> "The court is further advised that the word 'steal' as used in this specification means any wrongful taking, that is, a taking without right or permission."

In its prior consideration of the offense of tampering with military mail, as distinguished from mail in the custody of the United States postal service, this Court has noted that the framework of the essentials of proof is derived from the Federal mail statutes. 18 USC §§ 1702, 1708. United States v Lorenzen, 6 USCMA 512, 20 CMR 228; United States v Peoples, 7 USCMA 534, 22 CMR 324; United States v DiCario, 8 USCMA 353, 24 CMR 163.

The offense alleged in the instant case is patterned upon the latter of the cited statutes. It provides:

> "Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

> "Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

> "Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

> "Shall be fined not more than $2,000 or imprisoned not more than five years, or both. (June 25, 1948, ch 645, § 1, 62 Stat 779; May 24, 1949, ch 139, § 39, 63 Stat 95; July 1, 1952, ch 535, 66 Stat 314.)"

This section was designed "solely to protect the mails, and . . . while it includes larceny as understood at common law, it is not restricted to that offense, but makes criminal any unauthorized abstraction from the mails of postal matter." United States v Trosper, 127 Fed 476 (SD Cal)

(1904). The opinion in the *Trosper* case makes explicit that which is inferable from a reading of the statute itself: The words "steals, takes, or abstracts, or by fraud or deception obtains," etc., as used in the statute, denote several distinctly different acts, the commission of any of which, in the context of the enactment, shall constitute a punishable offense. Neither the statute itself nor the numerous opinions by which it has been construed purport to alter the meaning of these words, or to cast them in any light other than that in which they are ordinarily found in criminal law generally. All that the provision is designed to do, and the only effect it in fact accomplishes, is to proscribe "any unauthorized abstraction from the mails of postal matter," with only a general regard for the criminal means by which such abstraction is achieved. United States v Trosper, supra.

Necessarily, then, the military counterpart of this crime has the same purpose. In recognition of this, the framers of the Manual for Courts-Martial, United States, 1951, have provided two separate forms for use in connection with such cases. The first is patterned upon Title 18, section 1702,[1] and covers the taking "with design to obstruct the correspondence," or to "pry into the business or secrets" of another. Appendix 6c, Manual for Courts-Martial, supra, Form 151. The second derives from Title 18, section 1708, supra, and alleges a wrongful and unlawful opening, secreting, destruction, or stealing of mail matter before delivery to the addressee. Id., Form 152.

The specification in this case follows generally the latter form. By relying upon "stealing" as the ▌ means by which the offense was committed, the Government was required to establish every element of larceny and that offense is defined by Article 121 of the Code, supra, 10 USC § 921; United States v Trosper, supra; United States v White, 2 USCMA 439, 9 CMR 69. Cf. United States v DiCario, supra, and United States v McCarthy, 4 USCMA 385, 15 CMR 385. It follows from this that the law officer was required to instruct upon all elements of that offense, and failure to do so constitutes prejudicial error. United States v White, supra.

The Government argues, however, that the purpose of Federal mail statutes and their military counterpart under Article 134 of the Code is the protection of the sanctity of the mails, not merely the protection of property. Thus, we are told, while common-law larceny is embraced by both, any unauthorized abstraction from the mails satisfies the requirements of proof. Upon the basis of this reasoning and upon the asserted authority of the *Trosper* case, supra, and Bowers v United States, 148 Fed 379 (CA8th Cir) (1906), the Government concludes the instructions herein were correct.

The trouble with this argument is that it is predicated upon authorities which, by their express terms, are limited to forms of pleading. Such pleadings are convenient vehicles for bringing an offense to judicial attention, but a poor source of substantive law. United States v Ariola, 2 USCMA 637, 10 CMR 135.

It is true, in the words of the law officer, that "any wrongful taking, that is, a taking without right ▌ or permission," constitutes an offense against the mails. It is also true that larceny includes such a taking. But it does not follow from this that every "wrongful taking" constitutes larceny. Nor does it follow that because either may constitute the general type offense

---

[1] "Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both. (June 25, 1948, ch 645, § 1, 62 Stat 778.)"

charged, each stands on the same plane. To so hold would require us to ignore the special niche of infamy reserved for larceny in the military services. United States v Fowle, 7 USCMA 349, 22 CMR 139; United States v Estrada, 7 USCMA 635, 23 CMR 99; paragraph 33*h*, Manual for Courts-Martial, supra.

The peculiar odium attaching to larceny requires the holding that the "wrongful taking" alluded to by the law officer is in fact a lesser included offense to that charge. Such instructions will support a conviction upon the lesser offense, but not upon the greater. United States v McRory, 1 USCMA 274, 3 CMR 8; United States v Goddard, 1 USCMA 475, 4 CMR 67; and United States v Wright, 1 USCMA 602, 5 CMR 30. This result obtains however strong or compelling the evidence may appear. United States v Rhoden, 1 USCMA 193, 2 CMR 99.

The other assignments of error have been carefully examined by us and no merit is found therein. A petition for new trial submitted while the case was pending before this Court is based neither upon fraud nor newly discovered evidence. See Article 73, Uniform Code, supra, 10 USC § 873. In the main, it reiterates contentions urged in the petition for review. Since it asserts no basis for relief, the same is denied.

For the reasons set out above, the decision of the board of review is reversed. The case is returned to The Judge Advocate General of the Air Force for submission to another board of review with directions to modify the findings in conformity with this opinion, and to reassess the sentence in the light of such modifications.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

While I am in complete agreement with my associates that accused's petition for new trial should be denied and that the other assignments of error are without merit, I dissent from the Court's holding on the principal contention urged by accused—that the law officer's instructions were erroneous.

The artificial division of the same statute into lesser and greater offenses based on detestation, when but a single crime has been defined by Congress, is unique and unsupported by law or logic. Unique, too, is the reasoning that steal means larceny; larceny is particularly odious; and therefore in the military a special niche must be reserved for that offense. I thought it was a cardinal rule of statutory construction that words in a statute were to be interpreted in their ordinary acceptation and significance and the meaning commonly attributed to them. If that rule is applied, a hasty reference to any standard or legal directory will disclose that steal means to take without right or authority. However, if odium is to be the touchstone for measuring the gravity of an offense, I suggest the following thought which I express by means of paraphrasing a well-known saying: He who steals my wallet steals trash but he who steals my correspondence not only takes my property but he steals my innermost secrets and destroys the privacy of my confidential communications. Most assuredly, one the least bit familiar with the morale of overseas troops well knows that the interruption of messages to and from home may, in addition to the loss of property, end in broken spirits and disrupted family ties. If larceny has a special niche because it is odious, stealing mail is an offense which is more abhorrent.

As the majority notes, we have in prior decisions equated the military mail offenses generally to the Federal postal crimes. Accordingly, established precedent concerning the latter should be helpful in resolving the instant issue. See United States v Lorenzen, 6 USCMA 512, 20 CMR 228. The Court, however, ignores those authorities and refuses to recognize that we are here concerned not with a stealing in the sense of Article 121, Uniform Code of Military Justice, 10 USC § 921 —which punishes theft of another's property with a specific intent—but with a stealing from the mail in contravention of Article 134 of the Code,

10 USC § 934—which proscription is calculated to preserve the sanctity of the mails. A quotation from one of the authorities cited by my colleagues and reference to another should make my point clear. In United States v Trosper, 127 Fed 476, the District Court was concerned with asserted defects in an indictment alleging that the defendant "did steal" from the mail. In the course of its decision rejecting the defense contentions, the court made the following illuminating statement unmentioned by my brothers:

> ". . . [I]t may be well to observe, again, that the word 'steal' in said clause is not used, as already indicated, to designate technical larceny, but means simply 'to take without right or leave.' "

Moreover, in mail offense cases, other elements of larceny under Article 121, Uniform Code of Military Justice, 10 USC § 921, are not involved. As was noted in Bowers v United States, 148 Fed 379 (CA 8thCir), it is unnecessary that ownership in another be established, and value is immaterial. It is apparent, therefore, that my colleagues are mistaken in their conclusion that the Government, if it has alleged stealing from the mail, must establish every element of larceny under Article 121 of the Code, supra. And imagine the confusion which would exist if the value of the mail matter taken must be proved to fix the maximum punishment. Private correspondence may have no market value, but it often carries a message which cannot be purchased with legal tender, and the sanctity of the mails ought to offer it the same protection as a letter containing specified sums of money. The penalty for the interference should, therefore, not be determined by intrinsic worth. Manifestly, then, the instruction given by the law officer in the instant case cannot be branded as erroneous, for he properly defined "steal" in the sense it is used in the Article 134 mail offense.

The majority assert, however, that Trosper is inapposite for the reason that the court was there concerned only with a question of pleading. I merely point out that an indictment or a specification must state, either expressly or by fair implication, those items requisite to a successful prosecution. It is obvious and elementary that the Government need not overprove the facts alleged and manifestly instructions serve simply as guides for use by the triers of fact to determine whether the Government has proved its case. Trosper, then, authoritatively states the meaning of "steal" when used in a mail offense. Therefore, if we are to be guided by the civilian rule, it follows that the law officer's instruction in the case at bar which defines steal in the terms of Trosper is eminently correct. And I point out that my conclusion is not without support in prior service cases and in at least one opinion emanating from this Court. As long ago as United States v Lamphere, 3 CMR 531, the military approved the instruction as given by the law officer. And in United States v Rios, 4 USCMA 203, 15 CMR 203, at page 207, we made the following observation which is pertinent to the issue at hand:

> ". . . We cannot fail to observe, however, that, even in construing pleadings, 'steal' is not always deemed to 'designate technical larceny, but means simply "to take without right or leave" '. United States v Trosper, 127 Fed 476 (DC Calif); United States v Lamphere, 3 CMR 531. And in a general sense it may be used to designate any wrongful conversion. 32 Am Jur, Larceny § 2, page 886."

Further, the disposition ordered by the Court is of more than casual interest. Curiously enough, my associates conclude a "wrongful taking" from the mail is a lesser included offense to a charge of stealing from the mail. That to me is like saying larceny by trick is a lesser included offense of larceny by fraudulent representations. We have noted in previous cases that Articles 85 and 132, Uniform Code of Military Justice, 10 USC §§ 885 and 932, respectively, merely set forth different ways in which a single offense in contravention of each respective statute can be committed. United States v

382

Redenius, 4 USCMA 161, 15 CMR 161; United States v Johnson, 5 USCMA 297, 17 CMR 297; United States v Smith, 7 USCMA 102, 21 CMR 228. See also United States v Rosen, 9 USCMA 175, 25 CMR 437. The same principle should be applied in mail offenses, for any wrongful interference with that channel of communication—by whatever means committed—is proscribed. The different acts are but different means of committing the same offense and the punishment imposable for any such infraction is identical.

Reassessment of sentence on the basis of the same facts and for the same offense carrying the identical punishment is both a fruitless and futile act. The board of review has already approved the sentence as appropriate on the basis that the accused took the mail matter without right or permission. The present decision affirms the conviction on that theory, and a repeat performance should not be required.

I would affirm the decision of the board.