UNITED STATES, Appellee

v

RICHARD G. MANAUSA, Airman First Class, U. S. Air Force, Appellant

12 USCMA 37, 30 CMR 37

No. 14,184

Decided December 2, 1960

*Major Charles K. Rush* argued the cause for Appellant, Accused. With him on the brief were *Colonel James L. Kilgore* and *Captain Prichard E. Gray*.

*Lieutenant Colonel Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief were *Colonel John F. Hannigan* and *Lieutenant Colonel Merlin W. Baker*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was convicted by general court-martial for wrongfully and unlawfully opening mail matter; namely, four letters, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and larceny of another letter, contrary to Article 121 of the Code, 10 USC § 921. He was sentenced to bad-conduct discharge and reduction to the grade of basic airman. Intermediate appellate authorities affirmed the findings and sentence, and thereafter accused petitioned this Court for review, setting out two grounds for reversal. We granted his petition to hear argument on an assignment urging that accused's pretrial statement was improperly admitted into evidence.

Some development of the facts is necessary to a proper understanding of the issue. The record shows that accused was assigned to the 5700th Operations Squadron Orderly Room. Official mail was distributed through the orderly room, and upon accused's assignment,

Sergeant Jewell, who was his superior in the office, instructed him that he was to pick up official mail for the Operations Squadron at the Mission Mail Room and personal mail of individuals in the office with their permission. Directives applicable to unit mail clerks provide that mail "will be delivered only to the addressee or an agent designated by the addressee in writing," paragraph 6, AFM 182–3, and Sergeant Jewell had given such written authorization to accused. He had not, however, given him permission to open or appropriate such mail to his own use, and during the period involved accused and Jewell were the only persons authorized to pick up the latter's mail.

It was established that early in September 1959, four letters addressed to Jewell by relatives had been duly placed in postal channels. Three contained small amounts of currency and the fourth a check. In no instance had the sender authorized anyone to open or withdraw the letters from the mail be-

38

fore delivery to the addressee. Jewell, however, never received the letters, nor were they returned to the sender. Customarily, the sergeant received two or three letters containing money from these relatives each week, which he often opened in the presence of his fellow-workers. When no such mail arrived over a two-week period, he informed proper authorities that some of his mail was evidently lost or stolen. Consequently, on October 12, 1959, when another letter from his mother-in-law arrived at the base post office, it was intercepted. Sergeant Jewell was called and there he opened it and initialed and replaced the contents. Detection powder was also placed in the letter and, having been resealed, it was then returned to the postmaster. The next morning, that letter, which is the basis of the larceny charge, was turned over to accused at the Mission Mail Room together with certain other mail. Thereupon, the noncommissioned officer in charge of the mail room, one Sergeant Shealy, was called and he placed accused under surveillance. He observed accused enter a latrine in another building and, upon the latter's departure therefrom about two minutes later, Shealy immediately entered and discovered the torn pieces of the letter in a trash receptacle. An agent of the Office of Special Investigations was summoned, and no one was allowed to enter the latrine until he had arrived and recovered the remnants of the torn letter.

Thereafter, the agent sent for accused, warned him properly of his rights and, having obtained his consent, examined him under ultra-violet light. Traces of fluorescent detection powder were observed on accused's hands, around his pockets, and inside his billfold. He was then interviewed, which action resulted in the questioned pretrial statement. In it accused confessed he had taken between five and ten letters addressed to Jewell over the previous two-month period in addition to the decoy letter. Knowing Jewell's letters often contained money, he looked for them when he was short of cash, opened them and extracted the funds, and then destroyed them.

At trial, defense counsel objected to the admission of accused's confession in evidence on the ground that no proper foundation had been laid therefor in that the *corpus delicti* had not been established *aliunde* the pretrial statement. See United States v Landrum, 4 USCMA 707, 16 CMR 281; United States v Villasenor, 6 USCMA 3, 19 CMR 129; United States v Mims, 8 USCMA 316, 24 CMR 126; United States v McFerrin, 11 USCMA 31, 28 CMR 255; paragraph 140*a*, Manual for Courts-Martial, United States, 1951. Cf. Opper v United States, 348 US 84, 99 L ed 101, 75 S Ct 158. Appellate defense counsel reassert that contention here with regard to the opening of the mail offense, contending first that there was no evidence indicating the four letters had probably been opened as charged, and second that there was no showing the four letters were mail matter at the time accused allegedly opened them.

The first argument we reject with little comment. The evidence shows that the four letters, each affixed with proper postage and bearing return addresses, were deposited in mail channels. Although each was properly addressed and more than ample time had elapsed for delivery, none had been received by Sergeant Jewell, nor had they been returned to the sender. Normal delivery of mail was available to the unit, and obviously, therefore, it may be inferred the letters had been abstracted by someone before delivery to the addressee. Unless it is reasonable to conclude they were extracted for some spiteful or malicious purpose not involving any connection with their contents, then it may fairly be assumed they were not only taken but opened. Moreover, it is to be borne in mind that these particular letters contained money and that there was general knowledge by orderly room personnel that Jewell's letters often did so. Further, we note that in the instant case, the evidence also showed acccused had been virtually caught red-handed opening and destroying another letter addressed to Sergeant Jewell by one of the same parties who sent the other four letters, and no other

**39**

reason appears for nondelivery of the other letters. Surely, under the posture of the whole evidence *aliunde* the confession, there can be no doubt but that there was a showing the letters were probably taken and opened. And we have long since indicated evidence supporting that conclusion may be either direct or circumstantial. United States v Petty, 3 USCMA 87, 11 CMR 87. Accordingly, we rule against accused on this facet of his assignment.

The second prong of accused's argument, however, presents more difficulty. We have previously had occasion to discuss the principle that communications or parcels within the aegis of the Postal Service and its military counterpart or supplementary service fall within the protection afforded mail matter in the military. See United States v Lorenzen, 6 USCMA 512, 20 CMR 228; United States v Scioli, 7 USCMA 502, 22 CMR 292; United States v Peoples, 7 USCMA 534, 22 CMR 324; United States v Phillips, 7 USCMA 737, 23 CMR 201. While we have discussed the matter generally, we have not, however, yet been called upon specifically to delineate the point to which such protection of mail matter, once applicable, runs. Essentially, the defense urges upon us the contention that accused was not an authorized mail clerk for personal mail, but rather merely the agent of the addressee. Hence, as the argument goes, when accused picked up Sergeant Jewell's letters from the Mission Mail Room, that constituted a delivery of them to the addressee, thus removing them from mail channels and the protection accorded it.

The Government, on the other hand, urges that the military offense here involved is analogous to the crime denounced by 18 USC § 1702. That statute provides for the punishment of any person who:

". . . takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, . . ."

In this instance, the Government points out, the letters accused opened had admittedly been in postal channels, and Sergeant Jewell never saw them. Relying heavily on the decision in United States v Maxwell, 137 F Supp 298 (WD Mo) (1955), affirmed 235 F2d 930 (CA 8th Cir) (1956), appellate Government counsel urge that they were opened before delivery to the addressee and hence fall within the protection of the mails.

Generally speaking, under the decision in *Maxwell*, supra, to which we adverted in United States ▪▪▪ v Peoples, supra, there can be no doubt that mail which has been in postal channels is protected by 18 USC § 1702 until delivery to the person to whom it is directed. And in the *Lorenzen* case, after indicating that the current Manual outlines protection for mail matter not yet delivered or received as well as for mail matter in the custody of the Post Office Department or other agency, we went on to say:

"It is considered appropriate to observe at this point that the military offense of tampering with or obstructing the mail is not, in our view, the precise offense set forth in 18 USC § 1702, although the pattern is similar. Each serves a separate and useful function, but the military offense must include military channels which do not operate under the Post Office Department. A letter or package mailed by a serviceman does not come under the protection of 18 USC § 1702 until such time as it leaves the military postal center and enters the channels of the United States Postal Service. Department of Defense Bulletin 19–II–50, November 2, 1950. Hence the deterrent of military prosecution is the sole protection afforded such mail prior to that time. In addition, the individual serviceman does not customarily have his own letter

box, and therefore the military sanction, to be of any real effectiveness, must run to the point where the mail is actually placed in the hands of the recipient." [6 USCMA at page 515.]

Later, in United States v Scioli, supra, referring to the above-quoted statement, we said:

"The view which we expressed above as to the sweep of the military prohibition in this field is not one which we alone think sound. Paragraph 82, Special Regulations Number 65–15–1, dated July 6, 1953, which is a joint regulation applicable to all the Services, provides:

'The secrecy of the mails is inviolable. Tampering with or depredations against mail matter are offenses against the United States and are punishable by law. Mail is considered to be in United States Post Office Department or military postal channels from the time it is deposited in an authorized civilian or military post office or authorized locked mail depository, or is given to a designated military postal clerk or an authorized unit mail clerk or mail orderly for posting, until it is delivered to the addressee in person, or to a representative authorized by him in writing.' " [7 USCMA at page 504.]

If there has been any question as to the sweep of the proscription against mail offenses in the military, we now expressly hold that mail is protected until delivery to the addressee. Indeed, consonant with the protection of mail in the civilian jurisdiction, that conclusion is compelled by commonplace situations in the armed forces where mail may be left for the addressee on his desk or bunk, or where, particularly under combat conditions, there is no mail room or mail orderly in forward positions or outposts, and correspondence or packages must be carried there, when and as exigencies permit, by other individuals.

We have no desire to depart from the principles announced in the above-decided cases, and accordingly the answer to our present inquiry is framed by them. They indicate clearly that the end of the mail run is when delivery has been made to the addressee or his duly authorized representative. In the case at bar, the four letters never actually reached the hands of Sergeant Jewell, but the offense is controlled by the status of the accused when he received the victim's personal correspondence at the Mission Mail Room. True it is Jewell instructed him that, in addition to assuming responsibility as a mail conduit for official mail to be distributed through the orderly room, he was also to pick up personal mail from the mail room with permission of the individual addressee. But Jewell himself admitted that accused's job description included no such duties. Further, the squadron administrative officer testified that accused had no official duty with regard to personal mail and that he had assigned no such duties to accused nor to any other person in the organization. Additionally, Sergeant Shealy, who was in charge of the Mission Mail Room, testified he was authorized to deliver personal mail to one other than the addressee only upon written authorization by the latter. Under those circumstances, it appears that accused's position with regard to Jewell's personal mail was exactly that ascribed to him by the latter in his testimony—his agent. The relationship between the two was simply that accused acted as the Sergeant's messenger for Jewell's personal convenience, much as if the holder of a post office box gave another the key and instructions to pick up his mail. Thus, it is apparent that Jewell must accept the responsibility for causing the letters to leave mail channels. While it is true the letters never physically reached the hands of the addressee, in this instance the control over the release of the mail by those charged with its delivery to the addressee personally, flowed from Jewell, not from the custodians of the mail. That, we believe, requires a finding that the letters were delivered to the person to whom they were addressed within the meaning of the statute which prohibits opening or interfering with letters that have been in mail channels before delivery to the person to whom they were directed.

**41**

That conclusion is consistent with the regulation we quoted in *Scioli, supra,* that mail is safeguarded from the time it is put into postal channels until its delivery "to the addressee in person, or to a representative authorized by him in writing." Likewise, our determination that protection runs to the place where the mail is placed in the hands of the recipient is not undermined, for here the letters were turned over to accused at the express request of the addressee, which is equivalent to delivery to Sergeant Jewell himself. Nor does the persuasive opinion in United States v Maxwell, *supra,* militate against our holding for, as was pointed out in that instance, there was no express authority for anyone to receive mail matter as agent of any addressee, 235 F2d at page 931, and the Court of Appeals stated its belief:

". . . that the plain language of the statute discloses a clear intent on the part of Congress to extend federal protection over mail matter from the time it enters the mails *until it reaches the addressee or his authorized agent.*" [Emphasis supplied.] [235 F2d at page 932.]

Accordingly, we conclude the prosecution failed to establish the four letters here involved were mail matter within the protection of mail statutes and regulations at the time accused was charged with opening them. While the accused's conduct was reprehensible and the Government's evidence may have made out an Article 121 offense with regard to those letters, that crime was not charged. The evidence, which is insufficient to show that the letters were probably within the protection of the mails, is likewise, even with accused's confession, necessarily insufficient to support this conviction for opening mail matter. Consequently, that finding of guilty must be and is set aside and dismissed.

That, however, does not affect the validity of accused's conviction for larceny of the other letter. A proper foundation was laid for admission of his confession to that crime, and indeed the evidence of his guilt, even *aliunde* the confession, was compelling. Accordingly, the decision of the board of review is reversed and the record is returned to the board for reassessment of the sentence on the basis of the remaining finding of guilty.

FERGUSON, Judge (concurring in the result):

I concur in the result.

I agree fully with Judge Latimer that the accused in this case did not open mail matter, as the letters involved ceased to be in postal channels upon their delivery to him as the addressee's agent. Maxwell v United States, 235 F2d 930 (CA 8th Cir) (1956); United States v Lorenzen, 6 USCMA 512, 20 CMR 228; United States v Scioli, 7 USCMA 502, 22 CMR 292; United States v Peoples, 7 USCMA 534, 22 CMR 324. I am unable, however, to concur outright in his opinion in view of the *obiter dictum* with respect to the application of mail offenses to such situations as letters left upon desks or bunks or the delivery of mail by unauthorized personnel to forward positions under combat conditions. These matters involve considerations wholly extraneous to the issue here presented, and I prefer to withhold my views until the receipt of cases which raise the questions. Otherwise, I join in the rationale of the principal opinion.

QUINN, Chief Judge (dissenting):

There is a sharp disagreement as to what mail offense the accused is actually charged with committing. The accused maintains that the specification alleges an act in violation of 18 USC § 1708, but the Government contends it sets out a violation of Section 1702. There is a difference in language between the two statutes which for present purposes may be put aside. The controversy, however, serves to emphasize the need of designating specifically the statute involved, when the charge is under Article 134 of the Uniform Code, 10 USC § 934.

The principal opinion relies upon United States v Maxwell, 137 F Supp 298 (WD Mo) (1955), to sustain its conclusion. In my opinion, that case supports the Government's position.

*Maxwell* was a prosecution for a violation of Section 1702. Mail was delivered to a common mailbox located on the porch of a three-family apartment building. The first person to go to the mailbox customarily removed the mail, and deposited all matter not addressed to him on a little table in the entrance hallway. The defendant, one of the occupants of the premises, stole a letter which had been removed from the mailbox by another tenant or the superintendent of the building and placed on the table. There, as here, the defense contended that when mail passes from regular mail channels to an authorized agent of the addressee, there is no violation of Section 1702, because delivery to the agent is delivery to the addressee. However, the trial court rejected that construction of the statute.

District Judge Ridge held that Section 1702 is intended to protect the mail even after it leaves physical possession of the Post Office Department. He indicated it was particularly important to note that one of the acts against which the statute was directed was embezzlement. "Embezzlement," he said, "can only relate to an offense by one who has come into lawful possession of a letter, after it has been in an authorized depository for mail matter and is converted by the receiver to his own use, before it is delivered to the person to whom it is directed." United States v Maxwell, supra, page 303. Judge Ridge concluded that mail is protected under the statute until it is delivered to the *manual possession of the addressee.* He referred to several recent convictions for violations of Section 1702, which included among them, the prosecution of some bellboys to whom letters were entrusted for distribution to guests.

The Court of Appeals affirmed Judge Ridge's action in the *Maxwell* case. True, it said, as the principal opinion notes, that mail is protected "until it reaches the addressee or his authorized agent." But that statement was made early in the opinion and was apparently intended as a loose, general observation.

The final comment by the Court of Appeals clearly confirms the reasoning of Judge Ridge and his conclusion that delivery is not complete until the addressee obtains manual possession of mail addressed to him. It said:

"Here, the stolen letter did not reach the manual possession of the person to whom it was addressed, but was an undelivered letter over which Section 1702, we think, extended its protection, even though the letter was not, at the time it was stolen, in an authorized depository for mail matter.

"We think it is unnecessary to add anything further to the opinion of the District Court." [Maxwell v United States, 235 F2d 930, 932 (CA 8th Cir) (1956).]

Even if we accept the view that delivery to an authorized agent ends the protection of the statute, the problem here is whether the accused was an authorized agent or messenger. Concededly, he had received sometime before the offense a signed authorization from the addressee to pick up his mail. However, an agency is terminated by operation of law if the conditions of the agency are so changed that the agent must know that, if the principal was informed of the changed situation, he would not "consent to the further exercise of the authority." 2 Am Jur, Agency, § 74, page 60. The rule is equally applicable to the messenger status occupied by the accused. The accused admitted he knew that the addressee received letters containing money; that he stole some of these only when in need of money, but delivered all when not in need. It can be argued, therefore, that as between the addressee and the accused, the recurrent criminal purposes of the latter terminated his authority to receive mail, and he was not an "authorized" agent of the addressee. See United States v Sander, Fed Case No. 16,219.

I would affirm the decision of the board of review.