UNITED STATES, Appellee

v

DAVID L. RAYFIELD, Technical Sergeant,
U. S. Air Force, Appellant

12 USCMA 307, 30 CMR 307

No. 14,666

Decided April 21, 1961

*Major William A. Crawford, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel James L. Kilgore.*

*Lieutenant Colonel Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

GEORGE W. LATIMER, Judge:

Tried by general court-martial, accused pleaded not guilty but was convicted for a violation of Article 108, Uniform Code of Military Justice, 10 USC § 908, and two mail offenses, contrary to Article 134 of the Code, 10 USC § 934. He was sentenced to be separated from the service with a bad-conduct discharge. Intermediate appellate authorities affirmed and thereafter, apparently in view of our recent decision in United States v Manausa, 12 USCMA 37, 30 CMR 37, The Judge Advocate General of the Air Force certified the case to this Court under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, asking us to resolve three questions. The issues concern only the mail offenses, so we may confine our discussion to them.

## I

Each of those two specifications allege, pertinently, that on given dates accused, with intent to ▆▆▆▆▆ ▆ obstruct correspondence, wrongfully took a certain letter addressed to his commander from an official mail channel before delivery to the addressee. Clearly, each states a mail offense. See United States v Lorenzen, 6 USCMA 512, 20 CMR 228; United States v Scioli, 7 USCMA 502, 22 CMR 292; United States v Peoples, 7 USCMA 534, 22 CMR 324; United States v Phillips, 7 USCMA 737, 23 CMR 201.

The record shows that accused, who was first sergeant of his squadron, was indebted to a certain finance company and was delinquent in payments on his account. The manager of the company had attempted to work out satisfactory arrangements but was unable to do so and, after many unkept promises by accused, the former wrote accused's squadron commander requesting assistance. Not receiving any acknowledgment, some three months later he posted a similar letter to the same officer. Prescribed procedures required that the latter, upon receipt of such correspondence, forward to a higher headquarters a copy thereof and of the reply he sent to the creditor.

The manager, becoming aggrieved at the silence, subsequently wrote to the base commander. This letter came to the attention of accused's squadron commander through military channels. Because it referred to two previous letters purportedly addressed to him, which he had not received in the mail, he was concerned. And, since the inquiries pertained to accused, he suspected that delivery may have been interrupted by him. Consequently, he called accused in, warned him appropriately, and broached the matter. Accused admitted he had intercepted the two letters and, when his superior requested them, they were produced.

Thereafter, accused was interrogated by an agent of the Office of Special Investigations. After proper warning pursuant to Article 31, Uniform Code of Military Justice, 10 USC § 831, he admitted he had received the two letters at the squadron orderly room and opened the envelopes. Seeing that the correspondence pertained to his indebtedness and not wishing his commanding officer to see the letters until he had straightened out his financial affairs, he discarded the envelopes and retained the letters in his desk until a later date, when he took them to his living quarters. Thereafter, when confronted by his squadron commander, he turned the letters over to him.

Accused took the stand as a witness in his own behalf at trial, and his testimony is in substantial accord with the above evidence. He did contend, though, as he had when confronted by his commander, that he had no intent to obstruct his superior's correspondence, for he believed the latter preferred him, as first sergeant, to handle matters of this nature so that the commanding officer would not become involved. The Government presented evidence to the contrary, however, and that issue was submitted to the court-martial under an appropriate instruction and it was resolved adversely to accused.

Thus, the important inquiry certified by The Judge Advocate General requests us to determine whether the letters were in official military mail channels at the time they were abstracted by accused. See United States v Manausa, supra. For if they were, it is crystal clear that he was properly convicted for these two offenses.

The facts bearing on that question are these. It was stipulated by the parties that the squadron orderly room was an official agency for the transmission of communications. The letters in question were addressed to accused's commander and came in with the squadron mail. As first sergeant of his organization, accused had access to the official mail. Among his duties was the receipt of incoming letters addressed to his commanding officer. Most of the mail was enclosed in envelopes and, to facilitate its delivery, he was authorized to open it, evaluate it, and distribute it to the proper agency in the squadron for action. Where correspondence required action by the commander, accused was obligated to deliver it to him.

Appellate defense counsel acknowledge that the orderly room was stipulated to be a mail channel, but assert the record does not reflect how communications were received there, handled, and transmitted to other squadron agencies. Thus, they urge, if all incoming mail was picked up by a clerk whose duty was to deliver it to the addressees or their agents, he obviously would be an official mail conduit. Hence, letters so handled would continue to remain mail matter until they were so delivered. But, it is argued, delivery of the instant letters to accused, who was authorized to receive, open, evaluate, and distribute correspondence addressed to the commanding officer, terminated the mail run. In short, relying on the *Manausa* case, supra, they urge that accused was his squadron commander's alter ego, and that upon delivery to him as agent for his superior the letters ceased to be mail matter.

Counsel for appellant make a laudable effort to bring their client within the sweep of our decision in *Manausa*, but

as the board of review pointed out, a critical analysis of that opinion dictates that the defense attempt is abortive. In that case we held that delivery of letters to the addressee or his duly authorized representative terminated the mail run and removed the letters from the protection accorded by the military proscription against interference with the mails. And under the facts there before us, that rule compelled the conclusion that the accused had not unlawfully opened letters which were entitled to the preferred protection accorded communications in official mail channels. But, as we pointed out, in that instance the accused was charged with interference with personal mail and the underlying predicate for our conclusion was that he had no official responsibility for personal mail but acted upon the written authorization of the addressee merely for the latter's personal convenience as his agent "much as if the holder of a post office box gave another the key and instructions to pick up his mail." 12 USCMA at page 41. We were careful to distinguish Manausa's status in receiving his victim's mail from his official duties, for the evidence showed him to be responsible as a conduit for official mail to be distributed through the orderly room.

Thus the holding in United States v Manausa, supra, is not apposite to the factual situation before us in the case at bar. Here accused was first sergeant of the squadron and worked in the orderly room which was stipulated to be an official mail channel. He served not as a personal agent of his commanding officer for the latter's convenience, but rather had the official military duty as his subordinate to further transmit correspondence to the proper office. He was, in fact, mainly a diversion point where official communications could be routed to the proper terminus. And in this instance, since the two letters were directed to the squadron commander in his official capacity and would require his action, accused's duty was to course the correspondence in regular channels so it would reach his superior.

True it is that accused in most in-

stances had to open letters in order to determine the action headquarters and thus comply with his official duty to continue them on their way. But that should not be surprising to those familiar with the transmission of military communications. It is well known that much official correspondence falling within the protection of the military proscriptions against interference with mail matter is addressed generally to a commanding officer of a unit or organization. The truth of that statement is demonstrated by the record in the case at bar, for it was testified that most mail coming in to the squadron orderly room was in envelopes addressed to the commander. There had to be a clearing house, and this was manned by the accused. He could, by noting the contents, ascertain the intended recipient of correspondence, but it was contrary to his trust to interfere with the flow of letters in channels by abstracting them for his personal purposes. Here, the subject matter of the letters informed him that they had not reached the addressee, and he had a duty to make certain they were delivered to the commanding officer in person. The very nature of the military system for transmitting and delivering correspondence requires that designated personnel act as conduits for delivery of mail. In that regard, accused's authority was no different than that of a regular postal clerk who opens and peers in a mailbag and ascertains the true addressees to expedite delivery. Both individuals have the affirmative and official duty to transmit the mail to the person for whom it is ultimately intended. And although either may be considered, in a general sense, to be an "agent" of the ultimate recipient, certainly neither has any authority whatever to act in that person's stead to accept terminal delivery of the mail. Rather both are simply official instrumentalities through which the mail must move in order to reach the party for whom it is intended.

It should be emphasized that we are not here concerned with a doctrine of agency as it applies to personal correspondence. Clearly the actions of a private messenger are to be distinguished from those of an official public agent.

As the board of review pointed out in its decision upon reconsideration, distinguishing *Manausa* from the instant case:

". . . It was of no consequence, therefore, that accused [Manausa] as a private agent of the addressee did not adhere to specific instructions, for as long as he acted within the scope of his general authority he bound his principal (see Whiteside v U. S. 93 U. S. 247, 23 L. Ed. 882).

"Here, however, accused was an employee and an official agent insofar as official mail was concerned, and as with a *public* agent a different rule obtained. As was pointed out by the Supreme Court in the *Whiteside* case, *supra*:

'Different rules prevail in respect to the acts and declarations of public agents from those which ordinarily govern in the case of mere private agents. Principals, in the latter category, are in many cases bound by the acts and declarations of their agents, even where the act or declaration was done or made without any authority, if it appear that the act was done or declaration was made by the agent in the course of his regular employment; but the government or public authority is not bound in such a case, unless it manifestly appears that the agent was acting within the scope of his authority, or that he had been held out as having authority to do the act, or was employed in his capacity as a public agent to do the act or make the declaration for the government.' (and see *Wolf* case, *supra*, citing *Story on Agency*, pp. 552–553).

"To paraphrase the language of Judge Latimer, accused was here a mail conduit for the *official* mail of the squadron. He had no personal relationship with his commander with respect to the official mail received by him but on the contrary had an official responsibility to both his commander and the United States Air Force. Accordingly, as a conduit, delivery to him could not constitute delivery to his commander. He, as

an agent or employee was part and parcel of the military postal system, and his wrongful abstraction of the letters could not constitute in legal effect delivery to the addressee or in any wise bind the Government so as to constitute authorized terminal receipt of such correspondence.

"In this regard the language of the Court in United States v Dorsey, 40 Fed. 752 is quite pertinent:

'. . . The purpose of the statute is that all mailable matter intrusted to any of the employes, officers, or agents in the postal service, shall, without any interference with it, save that required in its necessary transportation, be conveyed from the place where it is delivered to the officers, agents, and employes of the mail service to the point of destination, by the first practicable means; and any unauthorized interference with such mail matter, and its safe and speedy transportation, is a gross breach of trust, if done by any such employes or agents, and to prevent which was the purpose of congress in the enactment of the statute. . . .'

"The aegis of protection ensured the sanctity of these communications until they reached their intended destination, i.e., the hands of the addressee, accused's commander. Opening the letters albeit with his authority did not empower accused to take or obstruct the delivery of the same or thereby remove such letters from their previous status as military mail, but on the contrary constituted a gross breach of trust (see Ennis v U. S. 154 Fed. 842)."

Accordingly, we conclude under the facts of the case at bar that accused was part of the military ▋▋▋▋▋ ▋ postal system. His assigned duties were within and not without that service, and his misconduct necessarily interfered with the letters reaching the addressee. His limited authority to open, evaluate, and distribute official mail did not, when the letters reached him, effect terminal delivery to the person to whom they were addressed within the meaning of the military prohibition against interference with the mails. The first certified question, therefore, must be resolved adversely to accused and is answered in the affirmative.

## II

The second certified question inquires whether the evidence establishes that accused committed the offenses of taking mail matter before delivery to the addressee with design to obstruct his correspondence. The previous discussion is largely dispositive of this issue, for accused admitted he took the letters because he did not wish the adverse information concerning him to reach his commanding officer until he had cleared up his financial difficulties. And other evidence in the record showing that he importuned another airman to hold back correspondence concerning him while he was absent from the base points in that same direction. As we have previously seen, authority to open, which was necessary to the proper discharge of accused's duties, is not authority to take and withhold. Thus, since the court-martial rejected accused's assertion that he believed his commander desired him to handle letters for creditors requesting assistance, it is crystal clear the evidence supports accused's convictions for the mentioned military mail offense. Accordingly, the second certified question is answered in the affirmative.

## III

The foregoing answers render it unnecessary to reach the third issue. For the above-stated reasons, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Under the rationale of the principal opinion, official mail retains its characterization as mail matter until some final action is taken with respect to its contents. I call attention to the fact that, although most military mail is directed to a particular commanding of-

**311**

ficer, it never comes within his manual possession. Rather, it is opened and distributed to appropriate staff agencies for necessary action, and replies are sent out by those with delegated authority to sign on the commander's behalf. Yet, under my brothers reasoning, these letters will remain mail matter until they have been circulated, needed action has been taken, and the correspondence filed. I do not understand such to be the law, and I suggest that the letters in this case ceased to be mail matter when the accused received and opened them on behalf of his superior.

Tried by general court-martial, the accused was found guilty of two specifications of wrongfully taking separate letters, addressed to his commanding officer, from official mail channels before delivery to their addressee, with intent to obstruct correspondence, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, and negligently destroying Government property by smoking in bed, in violation of Code, supra, Article 108, 10 USC § 908. He was sentenced to a bad-conduct discharge. Intermediate appellate authorities affirmed, and The Judge Advocate General of the Air Force certified to this Court the following questions:

"a. DOES THE EVIDENCE ESTABLISH THAT THE LETTERS DESCRIBED IN THE SPECIFICATIONS OF CHARGE II WERE IN OFFICIAL MILITARY MAIL CHANNELS AT THE TIME THEY WERE TAKEN BY THE ACCUSED?

"b. IF THE FIRST QUESTION IS ANSWERED IN THE AFFIRMATIVE, DOES THE EVIDENCE ESTABLISH THAT THE OFFENSES COMMITTED BY THE ACCUSED WERE THE TAKING OF MAIL MATTER BEFORE DELIVERY TO THE ADDRESSEE WITH DESIGN TO OBSTRUCT THE CORRESPONDENCE OF THE ADDRESSEE IN VIOLATION OF THE LAWS AND REGULATIONS FOR THE PROTECTION OF THE SANCTITY OF THE MAILS?

"c. IF THE SECOND QUESTION IS ANSWERED IN THE NEGATIVE, MAY ANY LESSER OFFENSES BE AFFIRMED UNDER THE PLEADINGS AND THE EVIDENCE, AND, IF SO, WHAT IS THE MAXIMUM PUNISHMENT?"

As Judge Latimer notes, the issues before us concern only the mail offenses and, in my view, the answer to the first question suffices to dispose of the case.

Accused was the squadron first sergeant. As such, he had authority to receive, open, evaluate, and make necessary distribution of official mail. His duties expressly included such handling of mail directed to his commanding officer. If the letters thus opened and examined required action by the commander personally, he was required to route them to his superior.

The two letters in question were delivered to the accused in his capacity as first sergeant. Properly exercising his authority, he opened them and discovered their contents related to his overdue debts. Rather than deliver them to his commander, he placed the letters in his desk. The commanding officer later discovered that he should have received the missives, and subsequent inquiries disclosed the accused's behavior.

From the foregoing, it will be seen that the question before us is simply whether these two letters retained their characterization as mail matter after they had been delivered to the accused in his capacity as first sergeant and were opened by him pursuant to the authority conferred upon him by the addressee. As noted above, I am certain they had arrived at their final resting place and were no longer entitled to specialized protection as part of the mails.

In United States v Manausa, 12 USCMA 37, 30 CMR 37, we were confronted with a substantially similar situation. There, the accused was authorized by the first sergeant to pick up the official mail at the local mail room and deliver it to the orderly room. At the same time, the first sergeant gave the accused written authority to obtain delivery of his personal mail. He was charged with wrongfully and unlawfully opening the sergeant's personal letters. We reversed

the conviction and held that delivery of mail matter to the addressee or his authorized agent terminated its protection as postal items. Of the situation there depicted, we said, at page 41:

". . . Under those circumstances, it appears that accused's position with regard to Jewell's personal mail was exactly that ascribed to him by the latter in his testimony—his agent. . . . Thus, it is apparent that Jewell must accept the responsibility for causing the letters to leave mail channels. While it is true the letters never physically reached the hands of the addressee, in this instance the control over the release of the mail by those charged with its delivery to the addressee personally, flowed from Jewell, not from the custodians of the mail. *That, we believe, requires a finding that the letters were delivered to the person to whom they were addressed within the meaning of the statute which prohibits opening or interfering with letters that have been in mail channels before delivery to the person to whom they were directed.*" [Emphasis supplied.]

In the case now before us, the accused, unlike Manausa, is not a person charged with the duty of picking up the mail and delivering it to the orderly room. Rather, he occupies the position of the commanding officer's designated representative to receive that mail from the orderly who served as the conduit for its delivery. And, if the individual making the mail run to the orderly room was not involved in the handling of mail matter, as we held in United States v Manausa, supra, the person charged with the duty of receiving, opening, and routing all letters so delivered surely cannot be held to function as a part of the military postal apparatus. To the contrary, it would seem clear beyond cavil that his desk represents the terminal point of all mail addressed to his commander and that, having reached that destination, the extraordinary protections accorded it under the law ended.

The principal opinion, however, attempts to distinguish our holding in *Manausa,* supra, on two bases. First, it points out that we there dealt with *personal* mail and here *official* mail is involved. The truth of this factual distinction must be admitted, but a scrutiny of the language in the *Manausa* opinions makes it apparent that the character of the items involved played no part in that decision. We spoke of personal mail there because that accused wrongfully opened a personal letter. We deal with official mail here because this accused interfered with the delivery of official letters. The real reason for the reversal of Manausa's conviction is simply the conclusion of a majority of the Court that he was the first sergeant's authorized agent for the purpose of picking up mail. No manner of post-publication discussion can alter this truth.

The second basic distinction between this case and United States v Manausa, supra, is said to be accused's position as "an official public agent" as opposed to Manausa's position as a mere "private messenger." Reference is then made to language in Whiteside v United States, 93 US 247, 23 L ed 882 (1876), regarding the principle that acts of a Government agent outside the scope of his authority do not bind the United States. Again, I believe the reasoning of the author Judge goes astray in concluding that this consideration is relevant here.

If accused is to be characterized as an official agent for receiving mail, it must also be admitted that he had the actual authority to receive, open, evaluate, and retransmit letters such as are here involved. Thus, he received and opened the letter pursuant to the performance of his duties. If what we said in *Manausa,* supra, is correct and if Judge Latimer's subsidiary reasoning in the principal opinion is proper, this terminated the status of the letters as mail matter and made them no more than ordinary correspondence. When the accused subsequently overreached his authority and secreted the letters in his desk, such action could not have the *nunc pro tunc* effect of again making the letters mail matter. Yet, that is

**313**

precisely the result to which the principal opinion leads.

Moreover, any attempt to predicate accused's criminal liability upon the artificial doctrine that acts beyond his actual authority did not bind the Government totally overlooks the fact that he had such authority with respect to mail. Indeed, the principal opinion so states, for it declares that he was empowered to receive the mail, to open it, and to deal with its contents. That is precisely what he did in this case, for his offense was obviously not committed until he had completed such actions and determined upon the concealment which gave rise to the charges against him. In short, the entire premise misses the point, i. e., that the issue before us involves only whether the letters ceased to be mail matter upon delivery to the accused. An inquiry into the accused's apparent authority as opposed to his actual authority to act on behalf of the Government simply has no bearing on this question.

Finally, I point out that the accused's status with respect to the handling of the letters was precisely the same as that of an office manager for a corporation or a secretary for a law firm. If such be empowered to open mail, scrutinize its contents, and route it to the appropriate corporate official or law partner when it is addressed to the company or firm, can it seriously be contended that the situation is the same as "that of a regular postal clerk who opens and peers in a mailbag and ascertains the true addressees to expedite delivery"? The question furnishes its own answer and, completely aside from our decision in United States v Manausa, supra, it would seem that the only logical conclusion which can be drawn from the record before us is that the letters left mail channels when they were delivered to the accused.

The situation is not unlike those cases which involve lawful delivery of mail to an errand boy or letters addressed to a named individual "in care of" the actual recipient. In such instances, the errand boy and the recipient who tampered with these items were held guiltless of mail offenses. United States v Driscoll, Fed Case No. 14,994; United States v Mulvaney, Fed Case No. 15,833; cf. Huebner v United States, 28 F2d 929 (CA 6th Cir) (1928), wherein it was held that removal of a letter from a pasteboard box maintained on private corporate premises for the receipt of incoming mail did not constitute a postal offense. Here, the letters left military postal hands when they were received by the accused. Nothing remained to be done with them except internal routing and acting upon their contents. Accordingly, it seems clear that they should not be afforded the benefit of protections designed only to safeguard the sanctity of the mails. United States v Trosper, 127 Fed 476 (SD Calif) (1904); United States v Peoples, 7 USCMA 534, 22 CMR 324; United States v Thurman, 10 USCMA 377, 27 CMR 451. I would, therefore, answer the first certified question in the negative.

The action which I deem proper with respect to the first issue eliminates any necessity to answer the second certified question. With respect to the third, it is obvious that under the pleadings, evidence, and instructions in this record, no lesser included offense can be affirmed. See United States v Thurman, supra, and United States v Manausa, supra. Whether the accused, for his conduct, may now be charged with and convicted of some other crime is a purely hypothetical inquiry and we should give no advisory opinion with respect thereto. United States v Bedgood, 12 USCMA 16, 30 CMR 16; United States v Higbie, 12 USCMA 298, 30 CMR 298. My views on these subjects do not, therefore, appear in this opinion.

I would reverse the decision of the board of review and order the mail charges dismissed. In view of the minor nature of the offense charged as a violation of Code, supra, Article 108, I would also direct a rehearing on the sentence.