UNITED STATES, Appellee,

v.

Ronald VEGA, Sergeant, U.S. Air Force, Appellant.

No. 68,345.

CMR No. 28950.

U.S. Court of Military Appeals.

Argued Oct. 6, 1993.

Decided March 4, 1994.

For Appellant: *Captain Gilbert J. Andia, Jr.* (argued); *Colonel Terry J. Woodhouse* (on brief); *Lieutenant Colonel Jay L. Cohen* and *Major Mary C. Yastishock.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Richard L. Purdon,* and *Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion of the Court*

GIERKE, Judge.

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of sabotaging a United States Air Force KC–135 refueler aircraft by cutting wires at various locations in the aircraft, in violation of 18 USC § 2155, as incorporated by Article 134, Uniform Code of Military Justice, 10 USC § 934. His approved sentence provides for a bad-conduct discharge, confinement and partial forfeitures of pay for 18 months, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated April 23, 1992.

We granted review of the following issue:

WHETHER THE MILITARY JUDGE IMPROVIDENTLY ACCEPTED APPELLANT'S PLEAS OF GUILTY TO THE CHARGE AND SPECIFICATION.

As part of the factual predicate for his guilty pleas, appellant entered into an extensive stipulation of fact which included the following:

4. Aircraft 57–1456 is a United States Air Force KC–135R tanker. On 21 February 1990 at approximately 0700 hours, SSgt King, 93FMS [Field Maintenance Squadron], assigned the accused to aircraft 57–1456 for the purpose of repairing fuel leaks in the # 2 main and left center wing integral tanks, originating from a 13″ crack in

the leading edge of the left wing of the aircraft....

5. Between 0800 hours and 0900 hours, the Accused cut numerous wires at various locations throughout aircraft 57–1456....

\* \* \*

17. From 26 February 1990 to 3 March 1990 an Operational Readiness Inspection (ORI) was conducted at Castle AFB concerning the 93 BMW [Bombardment Wing] by the HQ SAC [Strategic Air Command] Inspector General. Aircraft 57–1456 was unable to generate at any time during the ORI for evaluation purposes because of the damage to the wiring. The aircraft was therefore exempted from participation in the ORI.

18. Prior to the time the wiring was cut, Aircraft 57–1456 was in for repair of a 13″ crack in the left wing, which was causing a fuel leak. The fuel leak and crack would have grounded the aircraft for peacetime flying, but not for emergency operational requirements. Repairs of that type normally require one or two days. It was expected the aircraft would have been temporarily repaired before the start of the ORI on 26 February 1990, so it could be reported as mission capable. After the wires were cut, the aircraft was unable to fly for any purpose for thirteen days, from 21 February 1990 through 6 March 1990, when the final operational checks were completed. No work was performed on the aircraft for six of those thirteen days, due to the ORI.

\* \* \*

21. On 21 February 1990, Sgt Ronald Vega willfully damaged Aircraft 57–1456, a KC–135R tanker, which was national-defense material or a national-defense utility. He knew the damage he caused would prevent the aircraft from flying which would interfere with or obstruct the national defense of the United States.

After the military judge completed the plea inquiry and found appellant guilty, appellant made an unsworn statement which included the following:

Your Honor, I have thought long and hard about what I did on 21 February of 1990. I don't know why—how I could have done something so incredibly stupid and wrong. All I can do is tell you what went through my mind at the time. When I got out of the aircraft, I saw that it had a significant crack in the outside of the wing. It seemed clear that it would need a proper sheet metal repair before it would be safe to fly. The sheet metal specialist came out and looked at it and was going to get supplies when I heard over the radio that we were just to temporarily repair the crack with sealant.

When I heard this, something came over me and I got very angry inside. I felt like it was just one more example of how safety was being compromised in the name of speed. I just got it in my mind that the plane should not fly until it was fixed right. Since I was alone, I decided to take action to make sure it couldn't fly so I started cutting wires....

\* \* \*

I know what I did was a terrible crime. I have tried to understand how I could stray from the values that I have held for so long. I don't know how I could have done this when I know better after so many years in the service. I had no right to make the decision whether the aircraft should fly or not and I know that I might have put others at risk or even caused the country to be less prepared in the event of war.

I do not expect forgiveness for this. I don't blame anyone but myself for the trouble I'm in today. I also don't feel I'm in a strong position to ask for leniency. *I just ask that you consider that I did not intend to hurt anyone and I certainly did not do this to try and harm our country.* (Emphasis added.)

Appellant now contends that his unsworn statement is inconsistent with the requisite state of mind for a violation of 18 USC § 2155. We disagree and affirm.

 We will not overturn a guilty plea unless there is a "substantial basis" for doing

so. *United States v. Prater*, 32 MJ 433 (CMA 1991). Where an appellant claims on appeal that he raised matters inconsistent with his pleas of guilty, "the record must contain some 'evidence in "substantial conflict" with' the pleas of guilty" before we will overturn the guilty pleas. *United States v. Stewart*, 29 MJ 92, 93 (CMA 1989), *citing United States v. Hebert*, 23 USCMA 499, 50 CMR 579, 1 MJ 84, 86 (CMA 1975). The question in this case is whether appellant's disclaimer of any intent to harm the United States is in "substantial conflict" with his pleas of guilty. We hold that it is not.

The statute on which appellant's prosecution was based, 18 USC § 2155(a), provides in pertinent part as follows:

> Whoever, with intent to injure, interfere with, or obstruct the national defense of the United States, willfully injures, destroys, contaminates or infects, or attempts to so injure, destroy, contaminate or infect any national-defense material, national-defense premises, or national-defense utilities, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

In *United States v. Johnson*, 24 MJ 101 (CMA 1987), we concluded that "Congress used the term 'intent' in § 2155(a) to mean knowing 'that the result is practically certain to follow,' regardless of any desire, purpose, or motive to achieve the result." We held that "§ 2155 would be satisfied if someone acted when he knew that injury to the national defense would be the almost inevitable result, even though the reason for his action had nothing to do with national defense." 24 MJ at 105. We cited with approval the Eighth Circuit decision in *United States v. Kabat*, 797 F.2d 580 (1986), which upheld the conviction of nuclear war protesters who had damaged missile sites. In *Kabat* the protestors had argued that their actions were motivated by religious beliefs and a desire to avoid worldwide nuclear destruction, but not a desire to harm the United States. The majority in *Kabat* held "that the 'specific intent' required by section 2155 is only the intent to interfere with what may commonly be taken as the country's activities of national preparedness and not the intent to act to what one subjectively believes to be the detriment of the United States." 797 F.2d at 587.

In his unsworn statement appellant articulated his motive to ensure safety and disclaimed intent to harm the United States, but he admitted that he knew that injury to the national defense was inevitable. We conclude that appellant's unsworn statement was not inconsistent with the intent required for a violation of § 2155, as interpreted in *Johnson* and *Kabat*. Accordingly, we hold that appellant's guilty pleas were not rendered improvident by his unsworn statement.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS, concur.