**UNITED STATES**

v.

**Rae J. FOX, 316 88 0177 Corporal (E–4), U.S. Marine Corps.**

**NMCM 96 00361.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 10 May 1995.

Decided 22 Jan. 1998.

LT Syed N. Ahmad, JAGC, USNR, Appellate Defense Counsel.

Maj Stephen P. Finn, USMC, Appellate Government Counsel.

LtCol Frank F. Krider, USMCR, Appellate Government Counsel.

Before LUCAS, Senior Judge, GRANT and OLIVER, Appellate Military Judges.

PER CURIAM:

We have examined the record of trial, the assignments of error,[1] and the Government's response thereto. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Consistent with her guilty pleas, the appellant was convicted at a special court-martial, military judge alone, of forgery of a signature on a check, uttering the forged check, and stealing mail matter (the check), in violation of Articles 123 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 923 and 934 (1994) [hereinafter UCMJ]. The adjudged sentence included confinement for 120 days, a fine of $1,600.00, reduction to the lowest enlisted paygrade, and a bad-conduct discharge.

### Providence of the Guilty Plea to Stealing "Mail Matter"

In the first assignment of error, the appellant argues that her guilty plea to Additional Charge II, stealing mail matter, was improvident. She argues that she stole improperly addressed mail, which is not "mail matter." We conclude that the letter was "mail matter" and the appellant's plea was provident.

The appellant argues that, through no misconduct of her own, she received improperly addressed mail at her own home. She contends that it stopped being "mail matter" when she received it. We disagree.

■ The elements of the offense of stealing "mail matter" are as follows:

(a) That the accused ... stole certain mail matter;

(b) That such ... stealing was wrongful;

(c) That the mail matter was ... *stolen by the accused before it was delivered to or received by the addressee;* and

(d) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

1. I. APPELLANT'S PLEA TO ADDITIONAL CHARGE II IS IMPROVIDENT BECAUSE SHE STOLE IMPROPERLY ADDRESSED MAIL, WHICH IS NOT AN OFFENSE UNDER FEDERAL LAW.
II. THERE IS NO EVIDENCE IN THE RECORD THAT THE CONVENING AUTHORITY PERSONALLY SELECTED THE MEMBERS FOR APPELLANT'S COURT–MARTIAL, THEREBY DEPRIVING THE TRIAL COURT OF JURISDICTION OVER APPELLANT'S CASE.
III. APPELLANT'S PLEAS TO ADDITIONAL CHARGE I ARE IMPROVIDENT BECAUSE, EVEN THOUGH SHE STATED HER INTENT WAS TO DEFRAUD BY FORGING AND UTTERING THE CHECK, SHE BELIEVED THAT SHE WOULD BE LEGALLY LIABLE FOR THE MONEY AND SHE DESIRED TO REPAY IT; FURTHER, APPELLANT DID NOT BELIEVE THAT SHE WOULD CAUSE ANYONE TO LOSE MONEY—SHE WAS NOT TRYING TO MAKE "EASY MONEY." (Citations omitted.)
IV. THE GENERAL COURT–MARTIAL CONVENING AUTHORITY ERRED IN VACATING APPELLANT'S SENTENCE BECAUSE HE DID NOT OBTAIN A RECOMMENDATION FROM THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY THAT REFLECTED CONSIDERATION OF THE REPORT ON APPELLANT'S MENTAL EXAMINATION. THIS WAS PREJUDICIAL CONSIDERING THAT, BEFORE AND AT THE HEARING, APPELLANT REQUESTED THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY HIMSELF TO ORDER AND TO CONSIDER THE RESULTS OF A MENTAL EXAMINATION. (Citations omitted.)
V. THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY ERRED WHEN HE DID NOT RECUSE HIMSELF BECAUSE HE WAS NOT NEUTRAL AND DETACHED. (Footnote and citations omitted.)
VI. THIS COURT IS WITHOUT JURISDICTION TO REVIEW THIS CASE BECAUSE ITS JUDGES, WHEN ACTING IN THEIR JUDICIAL CAPACITY, ARE PRINCIPAL OFFICERS, WHO HAVE NOT BEEN APPOINTED TO THEIR POSITIONS IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)
VII. APPELLANT'S COURT–MARTIAL LACKS JURISDICTION BECAUSE THE MILITARY TRIAL JUDGE, ACTING IN HIS JUDICIAL CAPACITY, WAS A PRINCIPAL OFFICER, WHO HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)
VIII. APPELLANT'S COURT–MARTIAL LACKS JURISDICTION BECAUSE THE CONVENING AUTHORITY, IN HIS CAPACITY AS A CONVENING AUTHORITY, WAS A PRINCIPAL OFFICER, WHO HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)
IX. AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE CONSIDERING APPELLANT'S FOUR YEARS GOOD SERVICE TO THE MARINE CORPS. (Footnote and citation omitted.)

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 93(b)(2) [hereinafter MCM](emphasis added). The offense is intended to protect the mail and the mail system. MCM, Part IV, ¶ 93c. The term "mail matter" means matter deposited in a postal system, any authorized depository, or in official mail channels of the United States. *Id.* The term contemplates matter which is to be delivered to an addressee via the postal system or mail channels. MCM, Part IV, ¶ 93b(2)(c).

In the instant case, the military judge read the elements of the offense to the appellant and she indicated that she understood them. Record at 14–15. The appellant received a letter in the mail at her home. She opened the letter without looking at the address. Then, she realized that the letter was addressed to a person named Mr. David S. Cogdill. Record at 30.[2] The letter contained a solicitation for a loan in the form of a check. Record at 30. The name on the check was David S. Cogdill. The appellant signed the check in the name of Mr. Cogdill, made it payable to herself, and deposited the amount in her own credit union account. Record at 34.

The appellant relies on Federal case law construing 18 U.S.C. § 1708 (1994), the Federal statute which generally protects the mail. We note that the appellant was charged under Article 134, UCMJ, 10 U.S.C. § 934, not the general Federal statute. However, 18 U.S.C. § 1708 is an analogous Federal statute and warrants discussion. The appellant cites *United States v. Anton,* 547 F.2d 493, 495 (9th Cir.1976), for the proposition that "[o]nce an item is delivered to the address indicated by the sender and lawfully received at that address, the item ceases to be in the mail and the protection which section 1708 provides terminates."

In fact, the Federal circuits are divided on the question of when an item ceases to be "mail matter," and the conflict has not been

resolved by the Supreme Court. *See* Edward L. Hammer, Note, *A Functional View of the Rule of Lenity: Does Theft of Misaddressed Mail Violate the Federal Mail Theft Statute?,* 58 FORDHAM L. REV. 215 (1989). In *United States v. Palmer,* 864 F.2d 524, 527 (7th Cir.1988), the court summarized the different approaches as follows:

> We must decide whether to follow the First and Tenth Circuits, which apply § 1708 to misaddressed mail; the Ninth Circuit, which applies § 1708 to misaddressed mail if a change-of-address form is on file; or the Third and Fifth Circuits, which hold that § 1708 does not apply to mail after it reaches the address on the envelope. Every court that has spoken to the question has held (correctly, we believe) that § 1708 covers misdelivered mail; no court has given a persuasive reason for distinguishing misdelivered mail from misaddressed mail; we therefore conclude that § 1708 applies to misaddressed mail, and follow the First and Tenth Circuits.

In *Palmer,* the court examined these different approaches and highlighted the fact that some other courts relied on the distinction between misaddressed mail and misdelivered mail. *Id.* at 526 (citing *United States v. Lavin,* 567 F.2d 579 (3d Cir.1977)). However, the *Palmer* court stressed that "[section] 1708 should be interpreted broadly to effectuate a 'manifest legislative intent to protect the mails.'" *Palmer,* 864 F.2d at 526 (quoting *United States v. Douglas,* 668 F.2d 459, 461 (10th Cir.1982)). Ultimately, the *Palmer* court minimized the importance of the filing of a change-of-address form for the purposes of applying the statute. It went on to conclude that "[section] 1708 was designed to protect the integrity of the mails, and from this perspective there is no difference between misaddressed and misdelivered mail that falls into the hands of raptors." *Palmer,* 864 F.2d at 527.[3]

---

**2.** The record does not specifically indicate what address was written on the envelope or the check. However, the appellant argues that the envelope and the check had the name David S. Cogdill and the address of the appellant. Assignment of Errors and Brief on Behalf of Appellant at 2. For the purposes of Article 134, UCMJ, 10

U.S.C. § 934, we conclude that this distinction is not dispositive of the question of whether the check was "mail matter."

**3.** The appellant's court-martial occurred at Camp Lejeune, North Carolina, which is in the Fourth Circuit. We have been unable to find

We have been unable to find case law in the military system specifically deciding whether a misaddressed letter is "mail matter" for purposes of Article 134, UCMJ, 10 U.S.C. § 934. However, our superior court has provided guidance upon which we rely. In *United States v. Manausa*, 12 C.M.A. 37, 41, 30 C.M.R. 37, 41, 1960 WL 4632 (1960), the court held that mail is protected under Article 134, UCMJ, 10 U.S.C. § 934, until delivery to the addressee or his agent. *See United States v. Martin*, 39 M.J. 111, 112–13 (C.M.A.1994). When comparing the Federal statute to the analogous military prohibition, our superior court has held that "the military sanction, to be of any real effectiveness, must run to the point where the mail is actually placed in the hands of the recipient." *United States v. Lorenzen*, 6 C.M.A. 512, 515, 20 C.M.R. 228, 231, 1955 WL 3557 (1955). Also, the particular circumstances of military life, such as combat situations, often make it important for mail to be delivered to the addressee in person. This requires a broad protection for the mail system. *Manausa*, 12 C.M.A. at 41, 30 C.M.R. at 41. As our brethren in the Army Court of Military Review noted, "[t]he purpose of this offense is not only to protect individual mail but also to protect the mail system." *United States v. Sullivan*, 25 M.J. 635, 636 (A.C.M.R.1987).

◼ In the appellant's case, she admitted that she stole the letter before it was delivered to Mr. Cogdill. Her assertion that it was misaddressed and that she did not intend to steal the contents when she opened it do not change that fact. Record at 30. She stole the letter while it was still "mail matter" because it had not yet been delivered to Mr. Cogdill, the addressee. She should have returned the check to the post office when she realized it was not meant for her. We hold that, for the purposes of Article 134, UCMJ, 10 U.S.C. § 934, the check was "mail matter," even if it was addressed to a person other than the appellant and it had the appellant's address on it. Also, we hold that a letter is still "mail matter" until it is delivered to the addressee or his agent, regardless of the address.

case law specifically deciding the misaddressed/misdelivered distinction in that Circuit.

◼ Before a guilty plea will be overturned on appeal, there must exist a substantial basis on the record in law and fact for doing so. *United States v. Vega*, 39 M.J. 79, 80–81 (C.M.A.1994)(citing *United States v. Prater*, 32 M.J. 433 (C.M.A.1991)); *United States v. Logan*, 22 C.M.A. 349, 351, 47 C.M.R. 1, 3, 1973 WL 14641 (1973). After carefully reviewing the providence inquiry, we find that the appellant's factual admissions with respect to the elements show no "substantial basis" in law and fact for questioning the guilty plea. *Prater*, 32 M.J. at 436. This assignment of error is without merit.

### Jurisdiction of the Court–Martial

In her second assignment of error, the appellant argues that her court-martial lacked jurisdiction. Her assertion is based on the fact that the convening authority referred the charges to a court-martial convened by his predecessor in command. For the reasons set forth in *United States v. Brewick*, 47 M.J. 730 (N.M.Ct.Crim.App. 1997) and RULE FOR COURTS-MARTIAL 601(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) [hereinafter R.C.M.], this assignment of error lacks merit.

### Providence of the Guilty Pleas to Forgery and Uttering the Check

◼ In her third assignment of error, the appellant argues that her guilty pleas to falsely making a signature and then uttering a check with the intent to defraud were improvident. She claims she thought she would be legally liable for the money and did not want to make "easy money." Record at 47. However, as the Government correctly argues, the appellant admitted she forged Mr. Cogdill's signature on the check and uttered it. Record at 38. At that time, she intended to obtain the money for her own use and benefit. *Id.* An intent to defraud can be based on permanent or temporary use. MCM, Part IV, ¶¶ 48(c)(5), 49(c)(14). After examining the entire record, we do not find any of the appellant's statements to be in substantial conflict with her plea. We con-

*See United States v. Johnson*, 620 F.2d 413, 415 n. 2 (4th Cir.1980).

clude that the appellant related an adequate factual basis to support a finding of guilt. *See Prater*, 32 M.J. at 436. This assignment of error is without merit.

### Recommendation for Vacation of the Suspended Confinement

In her fourth assignment of error, the appellant contends that the General Court–Martial Convening Authority (GCMCA) made an error in vacating her suspended confinement. On 4 December 1995, the Special Court–Martial Convening Authority (SPCMCA) took action on the appellant's case. Pursuant to a pretrial agreement, the convening authority suspended all confinement for a period of 12 months. He approved the rest of the sentence and, except for the bad-conduct discharge, ordered it executed. On 11 December 1995, a hearing was conducted by the SPCMCA. The hearing was held to determine whether to vacate the suspended confinement. Art. 72, UCMJ, 10 U.S.C. § 872; R.C.M. 1109. The hearing officer found that the appellant violated Article 134, UCMJ, 10 U.S.C. § 934, during the probation period, by dishonorably failing to maintain sufficient funds for checks. He recommended vacation of the suspension. On 18 December 1995, the GCMCA vacated the suspended confinement and ordered it executed.

The appellant argues that the recommendation from the SPCMCA did not reflect consideration of the appellant's mental examination. However, the SPCMCA specifically stated, in his report, that no decision to vacate the sentence should be made until after a mental health evaluation was completed. The evaluation was eventually completed, and it concluded that the appellant was mentally responsible for her actions. The report of the evaluation was forwarded to the GCMCA and he considered it before deciding to vacate the appellant's sentence to confinement. *See* Report of Proceedings to Vacate a Special Court–Martial Sentence (DD Form 455), Enclosure (4); R.C.M. 1109. Therefore, we conclude that the GCMCA acted properly and this assignment of error is without merit.

### Recusal of the Vacation Hearing Officer

In her fifth assignment of error, the appellant argues that the SPCMCA committed error by not recusing himself from the vacation proceedings. Although the appellant claims that the SPCMCA was not neutral and detached, we conclude otherwise. The SPCMCA acted properly. The appellant's request for recusal of the SPCMCA was addressed, and denied, by the GCMCA. *See* Report of Proceedings to Vacate a Special Court–Martial Sentence (DD Form 455), Enclosure (4). The appellant has not made an adequate showing that the SPCMCA was not neutral and detached. *See generally United States v. Connell*, 42 M.J. 462, 466–68 (1995), *cert. denied*, 516 U.S. 1094, 116 S.Ct. 818, 133 L.Ed.2d 762 (1996). We see no error. Therefore, this assignment of error is without merit.

### Appointment of the Convening Authority, Trial Judge, and Appellate Judges

In her sixth, seventh, and eighth assignments of error, the appellant challenges the appointment of the convening authority, the trial judge, and the judges of this court. She argues that these officers are principal officers who were not appointed in accordance with the Appointments Clause of the United States Constitution. *See* U.S. CONST. art. II, § 2; *Weiss v. United States*, 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). For the reasons discussed in *United States v. Grindstaff*, 45 M.J. 634 (N.M.Ct.Crim.App.), *petition denied*, 47 M.J. 66 (1997), we find these assignments of error to be without merit.

### Inappropriately Severe Sentence

█ In her ninth assignment of error, the appellant argues that her sentence is inappropriately severe. Under the facts and circumstances of this case, we find that the sentence is not inappropriately severe. *See generally United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). The ninth assignment of error is without merit.

### Conclusion

Accordingly, we affirm the findings of guilty and the sentence, as approved on review below.